# JANE STOW *et al.*, Plaintiffs in Error, *v.* WALTER KIMBALL *et al.*, Defendants in Error.

### ERROR TO THE SUPERIOR COURT OF CHICAGO.

Under the 103rd section of the Statute of Wills, it is not necessary to name the heirs in the petition of the administrator for leave to sell real estate of an intestate. In this particular the case of *Turney* v. *Turney*, 24 Ill. 626, considered and explained.

The precise statements required by the statute, and an application for the aid of the court, are all that such a petition need contain.

Any newspaper printed at the county seat answers the intention of the law requiring a notice to be published in the nearest newspaper.

Such petition and notice, with proof of publication, under the statute, give the court jurisdiction of the subject-matter and the parties interested therein.

A decision of the court, where the jurisdiction has attached under such circumstances, is valid and binding everywhere, until reversed on a direct proceeding, in a superior court.

Under such a proceeding, if it were affirmatively shown that there were no debts to be paid out of the proceeds of the real estate, still the decree would be binding till reversed upon a direct proceeding.

A decree or order for the sale of "the real estate described in the petition" justifies the sale of all the estate so described.

Under such an order or decree, if but part be sold and report made and confirmed, no further proceedings being had, it is competent under the same order to proceed subsequently and sell the residue.

Though it is proper in the decree or order to require the administrator to report his proceedings, and he may be compelled to do so, yet the statute makes no such report and approval necessary to the validity of the sale, as in the case of guardians' sales.

Where there is a valid decree, the intention of the statute is to hold the sale valid. Sec. 106, Statute of Wills, supersedes the necessity of inquiring whether the administrator followed strictly the directions of the statute in making the sale. Nor does public policy require that a purchaser should examine into the fact of indebtedness, so as to ascertain if the sale is justified.

Where R. enters into a contract with B. for the purchase of real estate upon condition of making certain payments which are not made before the death of R., and the administrator goes to B. and gets him to treat the contract as forfeited and to give him a new contract, for the benefit of the heirs of R., he being one of the heirs; *semble*, if B., on payment of the purchase-money out of funds of the estate, deed the land to "*the heirs of R.*," without otherwise naming them, the heirs of R. hold the land in trust for the estate;

And where the money raised to make payment to B. was in part raised by sale

by the administrator under sec. 103 of Statute of Wills, the purchasers to whom the administrator conveyed and whose money was paid to B. may, after the deed is executed to "*the heirs of R.*," file a bill against them, though minors, and compel a conveyance of their interest to such purchasers. The minor heirs were treated as the holders of legal estate in trust for the benefit of the purchasers who had acquired the equitable title.

Such conveyance in this case was ordered to be made by a master.

DEFENDANTS in error, by bill filed on the chancery side of the court below, July 6, 1860, state, that Elisha Bailey, August 21, 1848, was seized of one-half acre of land, described by metes and bounds, and made his agreement in writing to sell and convey said premises to David Rattray, (since deceased,) thereby covenanting and agreeing to and with the said Rattray, "his heirs, executors, administrators and assignees," that upon condition said Rattray, his executors or administrators, should pay $200 in one year, and $200 in two years, from said date, to convey to said Rattray, his heirs, etc., the premises; which agreement was recorded. That Rattray died in September, 1849, intestate, leaving as his children and heirs, Jane Rattray (since married to W. H. Stow), Sarah Buxton (since deceased), leaving one child, Achsah J. Buxton, Ellen Rattray (since married to Volney J. Buxton), Hannah Rattray, Marian Rattray and Euretta Rattray, who, with said William H. Stow and V. J. Buxton, are made parties defendants; that letters of administration were, in Cook county probate court, granted to Jane Rattray, which are still in full force, and under which she entered upon administration in December, 1849.

That in course of administration, said administratrix, with said William H. Stow, her husband, filed a petition in said County Court, for the sale of real estate to pay debts of said deceased, June 25, 1852, copied below, including in the description the half acre described in bill, and such proceedings were had that, June 26, 1852, a decree of sale was made, by virtue of which order a portion of the premises described were sold, after subdivision and advertising the same according to law, July 26, 1853, to wit: Lots 5, 6 and 8 for $1,115 to defendant in error, John S. Buchanan, and Lot 7 to Hobart B. Griffin, for $380; which sums were paid to administratrix,

according to the terms of sale, one-third cash, and balance in six and twelve months.

That the consideration due from Rattray or his estate to Bailey, prior to July 26, 1853, had not been paid, and that money paid that day, by Buchanan and Griffin, was paid over to Bailey for said land, whereby, in equity, the land became and was the property of said Buchanan and Griffin, and though the consideration was wholly furnished by Buchanan and Griffin, the deed of the said land was made to "the heirs of David Rattray," July 27, 1853, and that the heirs of David Rattray had neither money nor property out of which to have paid said sum.

The defendants in error, Kimball, the Bushnells and Ellacott, were grantors of Griffin and Buchanan.

That said Hannah, Marion, Euretta and Achsah, plaintiffs in error, heirs to David Rattray, brought their actions of ejectment against Lewis Bushnell and George Ellacott, to recover possession of the lots of land, Nos. 5, 6, 7 and 8, founded on the title conveyed by said Bailey to them under name of "Heirs of David Rattray," which they only claim as heirs of David Rattray, and that the title under Bailey's deed to the heirs of Rattray, being acquired subsequent to the sale by the administratrix to the defendants in error and their grantors, is fraudulent as against the defendants in error.

Bill prays that plaintiffs in error may be decreed the trustees of the defendants in error, and be directed to convey the said lots to defendants in error, respectively, and that in default thereof the master make conveyance, and that the further prosecution of the ejectment suits be enjoined, and for other and further relief, and for temporary injunction, which was granted.

The plaintiffs in error, who were of age, filed their answer, admitting certain formal matters, but denying all the material facts stated in the bill. They deny that the money of Griffin and Buchanan was paid to Bailey either wholly or in part, as stated in bill. Admit the transfer by Bailey to "heirs of Rattray," but deny that Griffin and Buchanan's money constituted the consideration, and admit the title of plaintiffs

in the suits is founded on the deed of Bailey to " the heirs of David Rattray."

The infant defendants, by their guardian *ad litem*, answer.

Replications were filed and proofs taken, and a hearing had on bill, answers, exhibits and proofs, and a decree was entered sustaining fully the equities of the bill, and decreeing that the master in chancery execute, acknowledge and deliver deeds of conveyance, conveying in fee simple all the right, title and interest of the plaintiffs in error to the respective defendants in error, of their respective lots, to be made within ninety days; which deeds shall be effectual to bar all claim of the plaintiffs in error in and to the said premises, and all persons claiming by, through or under them; and also, perpetually enjoining the suing out writs of possession, or in any way disturbing the defendants in error, or any persons claiming by, through or under them.

Upon the hearing, the defendants in error read in evidence a copy of a penal bond, dated August 2, 1848, executed by Elisha Bailey to David Rattray, with a condition reciting that Bailey had agreed that day to sell to Rattray, for the sum of $400, payable as follows: $200 in one year, and $200 in two years from date, the premises described in the bill, and would convey upon payment being made.

The defendants in error offered in evidence a certified copy of the record of proceedings had in the County Court of Cook county, in the matter of the application of said administratrix to sell real estate of said David Rattray, which record sets out that on the 21st day of December, A. D. 1850, the said Jane Rattray, administratrix, filed her petition in said court, which petition is set out in the words and figures following, to wit:

" COUNTY COURT OF COOK COUNTY,
*December Term, A. D.* 1850.

STATE OF ILLINOIS, ⎱ ss.   Petition of Jane Rattray to sell real estate of·
  COOK COUNTY.   ⎰       David Rattray, deceased.

To THE HONORABLE HENRY L. RUCKER, JUDGE OF THE COUNTY COURT OF COOK COUNTY, AFORESAID:

" Your petitioner, Jane Rattray, administratrix of the estate of David Rattray, deceased, most respectfully petitions this

Honorable Court for permission to sell all the interest of said estate in the following real estate of David Rattray, for the purpose of settling demands against said estate, there not being sufficient personal property or money belonging to said estate to discharge the same from its liabilities, to wit:

" Lots one (1) and twenty-one (21), of C. C. Robinson's subdivision of block forty-seven (47), Township thirty-nine (39), Range fourteen (14) east of the third principal meridian ; and also out-lot twenty-seven (27), in the Board of Trustees of the Illinois and Michigan Canal subdivision of Section seven (7), Township thirty-nine (39), Range fourteen (14) east of the third principal meridian.

" And your petitioner will ever pray.

JANE RATTRAY, *Administratrix*."

Attached to said petition is an account in the words and figures following, to wit:

" DAVID RATTRAY, }
Estate. } Account current and vouchers presented by Jane Rattray, administratrix, and having been examined and allowed as follows, viz. :

| | |
|---|---|
| Receipts, - - - - - - - | - $116.00 |
| Disbursements, - - - - - | 130.50 |
| Balance, - - - - - - - | 14.50 |
| Allowed family for support, - - - | 500.00 |
| | $514.50 |

JANE RATTRAY, *Administratrix*."

There is no evidence that any notice was given either by publication or personal service.

And afterwards such proceedings were had in the matter of said petition that an order of sale was made by this court, which order recites that the administratrix had filed her inventory and appraisement bill of the effects of said deceased.

" And that there are claims against said estate unsatisfied after the application of the available assets, and that it is necessary to sell the real estate and property as petitioned for to pay the debts of said intestate," and therefore directs that said administratrix sell, in pursuance of the statute, etc., said real estate described in her said petition, setting it out, and that she report proceedings to the court.

And afterwards, on the 28th day of November, 1851, said administratrix made her report to said court, that she had made sale on the 15th of March, 1851, of the property described in the petition, to different persons, for six hundred and fifty-nine dollars.

Said report was approved by the court, and the proceedings confirmed.

And afterwards, to wit, on the 21st day of June, A. D. 1852, said administratrix filed in said court her petition for the further sale of real estate belonging to said David Rattray, which is set out in words and figures following, to wit:

" To THE HONORABLE HENRY L. RUCKER, JUDGE OF THE COUNTY COURT OF COOK COUNTY, ILLINOIS :

" Your petitioner, Jane Stow, late Jane Rattray, administratrix of the estate of David Rattray, deceased, and William H. Stow, her husband, would represent unto this Honorable Court, that the said David Rattray died seized of an interest in the following real estate in addition to that already sold by order of this court, granted on petition filed at the December term of the court, A. D. 1850.

" The said deceased died seized of the following pieces or parcels of land, to wit:

" Lots twenty-nine, thirty-two and forty, in C. C. Robinson's subdivision of out-lot forty-seven of the Trustees of the Illinois and Michigan Canal subdivision of Section seven, in Township thirty-nine, Range fourteen east of the third principal meridian, in Cook county, Illinois.

" And also that other piece or parcel of land lying in the south-east corner of the fifty-two and 90-100 acres set off to Henry Hubbard, in partition among the owners of the southwest quarter of Section eight (8), in Township thirty-nine (39) north, of Range fourteen east of the third principal meridian, in the county of Cook aforesaid, bounded and described as follows, to wit:

" Commencing at a stake standing about the centre of Randolph street, and at the south-east corner of said fifty-two and 90-100 acres, set off to Henry Hubbard as aforesaid, and running thence north, three chains and forty-four and a half links;

thence west, one chain and forty-seven links ; thence south, three chains and forty-four and a half links ; and thence east, one chain and forty-seven links to the place of beginning, reserving therefrom forty feet in width from the south side of premises for a highway, which last mentioned premises is improved with common fence, and two common dwelling-houses and appurtenances.

"Your petitioners therefore ask the aid of this Honorable Court in the premises.

"And your petitioners will ever pray.

JANE STOW, (late JANE RATTRAY,)<br>*Administratrix.*

JUNE 21, 1852.       WM. H. STOW."

Accompanying and attached to said petition was an account showing claims allowed to different persons, to the amount of $164.14.

Attached to the said petition also is a notice and certificate of publication in the words and figures following, to wit :

"ADMINISTRATRIX NOTICE.

Notice is hereby given, that I, the subscriber, Jane Stow, late Jane Rattray, as administratrix of the estate of David Rattray, deceased, late of Cook county, Illinois, shall apply to the County Court of Cook county, Illinois, by petition, for an order to sell so much of the real estate of the said David Rattray, deceased, as shall be necessary to pay the debts of the said estate, at a term of the said court, to be held at the court-house, in the city of Chicago, in the county of Cook, aforesaid, on the third Monday, being the twenty-first day of June, A. D. 1852, and all persons interested in said real estate are requested to be present and show cause why it should not be sold for the purpose aforesaid.

WM. H. STOW.<br>JANE STOW, (late JANE RATTRAY,)<br>*Administratrix of estate of David Rattray, deceased.*"

Also certificate by publisher of *Daily Democrat* of publication in said paper of above notice three weeks, commencing 8th May, and ending 29th May, 1852.

Also an order, appointing James L. Lowe guardian *ad litem*, and his answer.

Also a decree made on the 26th day of June, 1852, by said court, reciting that "it appearing from the records and files of this court that said administratrix has filed her inventory and

appraisement bill of the effects of said deceased, and that there are claims against said estate unsatisfied, after the application of the available assets, and that it is necessary to sell the real estate and property as petitioned for, to pay the debts of said intestate," and that due proof of the publication of the time, place and intention of presenting said petition has been made, etc. " And it also having been shown to the satisfaction of the court that said deceased and his legal representatives were the owners of or have an interest in the property asked to be sold," and directing that said petitioners proceed, in pursuance of the provisions and directions of the statute, to make sale of the real estate described in said petition, to wit: (setting it out as in petition,) and that they report to the court at the next term had thereafter.

And also a report made on the 21st day of September, 1852, stating that after first advertising and posting notices according to law, she did, on the 9th day of September, 1852, sell at public auction, at the time and place mentioned in said notices, lots of land other than that in controversy, for the sum of $365.

And an order showing that the court approved said report, and ordered said administratrix to execute deeds therefor when the necessary security should be given for the balance of the purchase money.

Which is all the record in the matter of the sale of said real estate.

The defendants in error read in evidence deeds from Jane R. Stow, adm'x, and W. H. Stow, her husband, for lots 5, 6 and 8, to John S. Buchanan, and for lot 7 to Hobart R. Griffin, which were alike except in the description, and the last is as follows:

(Here follows deed to Griffin.)

Deeds connecting defendants in error with Griffin and Buchanan, were read.

The plaintiffs in error offered in evidence the record of said County Court of all the claims allowed against said estate, which exhibits, that the sum of five hundred dollars was allowed on the 21st of March, 1850, to the family, in lieu of

specific articles, and that they had taken in part payment thereof, the whole of the personal property at its appraised price of one hundred and six dollars, leaving a balance due of $394.

The record further exhibits claims allowed against the estate, to the creditors, and for expenses of administration, up to the 21st day of June, 1852, to the amount of $243.95. Of this amount all had been allowed, before the first application for sale of the real estate, except the sum of $15.68.

The only other claims allowed against the estate were as follows : 9th July, 1852, the sum of $37.63, and on 17th September, the sum of $52.25, which was after the filing of the second petition and the rendering of the decree for sale.

Another claim was allowed Oct. 24, 1855, for $50.

The whole of claims allowed against the estate to the creditors and for expenses of administration, is thus shown to be $744.79. Of this amount the sum of $637.95 was all that was allowed before the second application for the sale of real estate.

It was proved that J. W. Waughop, as an attorney for the administratrix of David Rattray, conducted the proceedings to procure the order to sell the real estate, and that Buchanan purchased lots 5 and 6 for $380 each, Griffin lot 7 for $350, and Buchanan lot 8 for $355, in the order named, on the 26th July, 1853, for one-third cash, and balance in equal sums payable in six and twelve months, with interest. The premises described as a half acre in the bill, were, before the sale, in connection with another half acre adjoining, subdivided by the administratrix into twelve lots, numbered from one to twelve inclusive. The purchasers at the time of the sale did not know the condition of the title, but were assured by Waughop and Stow that it was all right, after the sale, when deeds were executed. Default had occurred in paying the money according to the terms of the contract read in evidence from Bailey to Rattray, dated August 2, 1848. Bailey claimed the right to forfeit the contract, and according to the recollection of the witness Waughop, he did declare a forfeiture before April 7, 1851. At that time Bailey

entered into a new and substituted contract with Jane Rattray, in trust for herself and the minor children of David Rattray, for the same premises, for $550, $200 cash and the balance in six months, and six dollars per month as rent, this sum being over $100 more than was due on the old contract of August 2, 1848. Besides the $200 paid at the time of making this contract, Jane R. Stow, late Rattray, paid $200, December 11, 1851, and sometime in 1852, $100 more. On the 27th of July, 1853, the balance due on this contract was ascertained, from $50 to $75, and an order drawn by Mrs. Stow on Waughop, for the amount, who paid it from the money in his hands received at the sale the day before, without the direction or knowledge of the purchasers, and took from Bailey the deed to the " heirs of David Rattray," he, Waughop, supposing that the title would enure to the use of the purchasers. The payments on this contract, prior to the last, were made from the proceeds of real estate sold under decree for the payment of debts before the sale in controversy.

W. C. GOUDY, for Plaintiffs in Error.

I.   The County Court had no jurisdiction of the persons of the heirs of David Rattray.

1.   There is no evidence that the notice was published in the nearest newspaper.   Stat. of Wills, § 103.

2.   The heirs are not made parties.   *Schneider* v. *McFarland*, 2 Comst. 461; *Whitmore* v. *Johnson*, 10 Humph. 610; *Sherry* v. *Denn*, 8 Blackf. 542; *Turney* v. *Turney*, 24 Ill. 625.

3.   A guardian *ad litem* was not appointed for all the minor heirs, and did not actually appear and defend for any.   Stat. of Wills, § 107; 1 Hill, 130; 2 Comst. 449; 4 Binney, 97; 11 Mass. 507; 17 Mass. 91; 23 Ill. 47.

II.   The court had no jurisdiction of the subject matter.

1.   The record must contain the facts necessary to exhibit a case requiring and authorizing the court to act.   Laws 1849, 62, §§ 1, 5, 23; *Propst* v. *Meadows*, 13 Ill. 165; *Young* v. *Lorain*, 11 Ill. 636; *Heirs Langworthy* v. *Baker*, 23 Ill. 487; *Coles et al.* v. *Haskins*, 9 Mass. 542; Laws N. Y. 1813, 450, §

23; *Corwin* v. *Merrit,* 3 Barb. S. C. 341 ; *Ford* v. *Walsworth,* 15 Wend. 449; *Bloom* v. *Burdick,* 1 Hill, 130; *Atkins* v. *Kinman,* 20 Wend. 241 ; *Pettit* v. *Pettit,* 32 Ala. 288 ; *Farrar* v. *Dean,* 24 Mis. 16; *Martin* v. *Starr,* 7 Ind. 224 ; *Sibley* v. *Waffle,* 16 N. Y. 180.

2. There was no deficiency of personal assets for the payment of debts shown by the petition or proof: the sale could only be made to pay debts allowed. *Dorman et ux.* v. *Yost et al.,* 13 Ill. 127 ; *Davenport* v. *Young et ux.,* 16 Ill. 548 ; *Lloyd* v. *Malone,* 23 Ill. 47.

3. The petition must contain the jurisdictional facts. *Dorman et ux.* v. *Yost et al.,* 13 Ill. 129 ; *Pettit* v. *Pettit,* 32 Ala. 288 ; *Saltonstall* v. *Riley,* 28 ib. 164 ; *Whitmore* v. *Johnson,* 10 Humph. 610 ; *Estes* v. *Johnson,* ib. 223; *Sherry* v. *Denn,* 8 Blackf. 542.

4. If there was any deficiency of personal assets at the time the decree was rendered, it was supplied by the first sale under the decree of property to the amount of $365, which was reported and confirmed, ending the proceeding ; the subsequent sale on July 26, 1853, without any further order, there being no deficiency, which has never been reported or confirmed, was *void.* *Bybee* v. *Ashby,* 2 Gilm. 161 ; *Ryan* v. *Dox,* 25 Barb. 440.

III. There was no title, at the time of the petition, belonging to the estate of Rattray subject to sale for his debts, because the equitable title held by him at his death had been forfeited, and the property sold to the heirs, under the contract of April 7, 1851.

IV. The evidence shows that Buchanan and Griffin did not pay the money to Bailey, as charged in the bill, and the heirs did not hold as trustees.

1. The *allegata* and *probata* do not agree. *Rowan* v. *Bowles,* 21 Ill. 291.

2. The rule of *caveat emptor* applies. *Bingham* v. *Maxcy,* 15 Ill. 295 ; *Ward* v. *Brewer,* 19 Ill. 291.

F. H. KALES, for Wilson.

G. HERBERT, for Kimball and others.

This and the following case were argued together.

The County Court is, equally with the Circuit Court, when hearing and determining applications for the sale of real estate of deceased persons, a court of general and not inferior jurisdiction, and as liberal intendments will be made to sustain its judgments as in favor of the judgments of the Circuit Court. Acts 1859, § 13; *Propst* v. *Meadows*, 13 Ill. 165—169; *Stone* v. *Wood*, 16 Ill. 177; *Ralston* v. *Wood*, 15 Ill. 159; *Hann* v. *Yocum*, 17 Ill. 387; *Langworthy* v. *Baker*, 23 Ill. 488; *Ex parte Watkins*, 3 Pet. 205.

It is not necessary that all the facts and circumstances which justify its action should affirmatively appear upon the face of the proceedings. *Propst* v. *Meadows*, 13 Ill. 169; *Grigon's Lessees* v. *Astor*, 2 How. 319, 339, 340; *Langworthy* v. *Baker*, 23 Ill. 489.

Every presumption runs in favor of the jurisdiction of a court of general jurisdiction. *Wills* v. *Mason*, 4 Scam. 88; *Whitney* v. *Porter*, 23 Ill. 447; *Vance* v. *Frank*, 2 Scam. 264; *Beaubien* v. *Buckenhoff*, 2 Scam. 273, 274; 1 Sand. 74; *Kenny* v. *Grier*, 13 Ill. 448, 449; *Horton* v. *Critchfield*, 18 Ill. 136.

This presumption, it seems, may also run in favor of an inferior tribunal. *Morgan* v. *Green*, 17 Ill. 398.

The judgments of courts of general jurisdiction are always held *conclusive* in collateral proceedings until the same are reversed upon direct proceeding had for that purpose. *McCoy* v. *Morrow*, 18 Ill. 594; *Cody* v. *Hough*, 20 Ill. 45, 46; *Prescott* v. *Fisher*, 22 Ill. 393; *Ralston* v. *Wood*, 15 Ill. 170; *Williams* v. *Amroyd*, 7 Crand. 423; 3 Pet. 207; 2 How. 342, 7 How. 172; 8 How. 412; 12 How. 385, 386; 6 Pet. 729; 11 Mass. 227; 11 Serg. and R. 429; 26 Ill. 179, 182; 27 Ill. 92; 3 Scam. 108; 21 Ill. 285; 10 Pet. 471, 478; 14 How. 588; 2 Pet. 165.

" A purchaser is not bound to look beyond the decree. If there is error in it of the most palpable kind; if the court who rendered it have, in exercise of jurisdiction, disregarded, misconstrued or disobeyed the plain provisions of the la which gave them the power to hear and determine the cas

before them; the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error; so where an appeal is given and not taken in the time prescribed by law." *Grigon's Lessees* v. *Astor*, 3 How. 340, 344; *Buckmaster* v. *Carlin*, 3 Scam. 108—112; *Mitchell* v. *State Bank*, 1 Scam. 526; 2 Pet. 168; Serg. and R. 429; 11 Mass. 227; *Vorhies* v. *Bank of United States*, 10 Pet. 477, 478.

If the jurisdiction was improvidently exercised in a manner not warranted by the evidence, and even if there were no debts at the time the sale was ordered, yet it is not to be corrected at the expense of the purchaser. *Perkins* v. *Fairchild*, 11 Mass. 227; 2 How. 340.

"The granting the license to sell is an adjudication upon all the facts necessary to give the jurisdiction, and whether they existed or not, is wholly immaterial," so long as it is attacked collaterally. "The record is absolute verity, to contradict which there can be no averment or evidence." 2 How. 340; 11 Mass. 227; 6 Pet. 729; 11 Serg. and R. 429.

"These principles have become rules of property, on which the repose of the country depends." There are no judicial sales around which greater sanctity ought to be placed than those made of the estate of decedents by order of the courts to whom the laws of the State confide full jurisdiction. 2 How. 343.

The publication of the notice was sufficient to give jurisdiction of the person, and that with the appointment of the guardian *ad litem* effected its object, the appearance and answer of those interested in the estate, the present plaintiffs in error and those whom they represent. *Herdman* v. *Short*, 18 Ill. 60, 61; *Cody* v. *Hough*, 20 Ill. 45; *Whitney* v. *Porter*, 23 Ill. 448; Statute of Wills, § 107.

The effect of the judgment was on either petition the same. All the parties and privies are estopped and conclusively bound by the facts put in issue on the record and necessarily found by the judgment. *Avery* v. *Reihle*, 1 Scam. 342; *Smith* v. *Smith*, 17 Ill. 485; 1 Greenl. Ev. §§ 523, 525, 527, 528, 195; 17 Mass. 267, 268; 1 Salk. 276; 3 Salk. 151; 3 Maine, 316; 3 Cush. 132. And this is true though the petition were

essentially defective, so that it would have been adjudged bad on demurrer. 1 Greenl. Ev. §§ 528, 529; 1 Mason, 519; *Wells* v. *McClening*, 23 Ill. 410; 7 Pick. 342.

Estoppels are recognized in equity as well as at law. *Cochran* v. *Hanew*, 22 Ill. 349; *Prettyman* v. *Wilkey*, 19 Ill. 241; *Penn* v. *Heisey*, 19 Ill. 295; 2 Gresley Ev. 430, 431, 357, 361.

The objection for want of confirmation only applies to guardians' sales. No confirmation is required in an administrator's sale, by our statutes.

The decree was, to sell the real estate described in the petition; *not a part*, but *the whole*. No duty was imposed upon the purchaser to look beyond the decree or order of sale. Stat. of Wills, §§ 105, 106.

W. C. Goudy, for Plaintiffs in Error.

I. The proper parties must be made. *Whitney* v. *Porter*, 23 Ill. 447; *Herdman* v. *Short*, 18 Ill. 60; *Turney* v. *Turney*, 24 Ill. 625.

II. There is no lien, by common law, on the property acquired by the heirs for the debts of the ancestor, of the quality of those allowed against the estate. 2 Williams' Ex'rs, 1436; *Ryan* v. *Jones*, 15 Ill. 1.

The statute authorizing the sale of real estate to pay debts is not remedial, but is special and extraordinary, and to be strictly construed. *Langworthy* v. *Baker*, 23 Ill. 487; *Smith* v. *Hileman*, 1 Scam. 323; *Herdman* v. *Short*, 18 Ill. 60; *Whitney* v. *Porter*, 23 Ill. 447. Cases cited in opening, Point II.

III. The plaintiffs in the ejectment suits are not estopped. *Blain* v. *Harrison*, 11 Ill. 386; *Summers* v. *Babb*, 13 Ill. 483.

Caton, C. J. We said in *Turney* v. *Turney*, 24 Ill. 625, in a direct proceeding to reverse the order of sale, that the petition in a proceeding like this, should contain the names of the heirs; but that case was finally decided upon another point. We are not prepared to hold that the whole proceeding is void where the heirs are not named in the petition.

The statute, which is the one hundred and third section of

our Statute of Wills, says the administrator "shall make out a petition to the Circuit Court of the county in which the administration shall have been granted, stating therein what real estate the said testator or intestate died seized of, and so much thereof as will be necessary to pay his or her debts as aforesaid, and request the aid of the court in the premises." This is all the statute says about the form or contents of the petition, and we cannot hold that the proceeding was void, when the petition, as in this case, contains the precise statements which the statute says it shall contain. It would be difficult to compute the number of titles that would be overturned by such a decision. Sound and judicious practice no doubt requires that the names of the heirs and devisees, and their grantees, if known, should be inserted in the petition, but the statute has not prescribed it, and we must not hold the proceeding void for the want of it.

The statute also requires the petitioner to serve a copy of the petition and account mentioned in the fore part of the section, on each of the heirs or their guardian, "or by publishing in the nearest newspaper, for three weeks successively, commencing at least six weeks before presenting of said petition, of the intention of presenting the same to the Circuit Court for the sale of the whole or so much of the real estate of the said testator or intestate as will be sufficient to pay his or her debts, and requesting all persons interested in said real estate to show cause why it should not be sold for the purposes aforesaid." Such a notice was published for the time specified, in a newspaper in Chicago, the county seat where the court was held. An objection, which we hardly think worthy of notice, is made that it is not shown that this was the nearest newspaper. The statute has no such trifling meaning as that it is necessary to measure with chain or tape line, the distance from the judges' bench to the printing office, to see which of two or more newspapers published at the county seat is the nearest. Any newspaper printed at that place answers the intention of the law.

That this petition and notice gave the court jurisdiction of the subject-matter and of the parties interested in the real estate, we are satisfied. The court was thus properly called

upon to hear, to consider and to decide upon the matter, and when it has so decided, that decision is valid and binding everywhere, till it is reversed on a direct proceeding by a superior court. In this collateral action we cannot inquire whether such a case was made out before the court, as justified its decree. If the court acted without proof, or even if it were affirmatively shown that there were no debts to be paid out of the proceeds of the real estate, still we could not, for that reason, treat the decree as void. As before remarked, it is binding till reversed upon a direct proceeding for that purpose.

The decree is very broad in its terms, and directs the administratrix to sell all of the real estate mentioned in the petition, including the property in question. At the first sale under the decree, but a part of the property was sold. This sale was reported to and approved by the court, and there the order stopped—afterwards the administratrix sold the property now in controversy. It is now objected, that as no order was made at the time the first sale was approved, either ordering a further sale or continuing the cause, that it then ceased to be a matter pending in court, and consequently the power to sell expired. We can hardly adopt this conclusion. The administratrix was, by the order, directed to sell the whole of the estate. She sold a part and reported it, and her proceedings thus far were approved. We do not see where the necessity was for the court to make any other order at that time. The first decree told her to sell the whole, which necessarily included that which remained unsold, and it would have been mere repetition for the court to make another order directing the sale of the residue.

Although the order of sale very properly required the administratrix to report her doings under the order of the court, and she should have been compelled by the court to comply with that portion of the order, yet neither the decree of the court nor the statute, made such a report and approval necessary to the validity of the sale, as is the case in the sale of the estate of minors for their support and maintenance. It seems to be the intention of the statute to hold the sale valid wherever there is a valid decree ordering the sale. Section

106 says, that if any executor or administrator who shall be ordered to make sale of real estate as aforesaid, " shall sell the same contrary to the provisions of this chapter," he shall forfeit the sum of five hundred dollars, "*provided* that no such offense shall be deemed to affect the validity of such sale." This supercedes the necessity of inquiring whether the administratrix followed strictly the directions of the statute in making the sale.

The last objection is, that the property did not belong to the intestate, but was the property of the heirs in their own right. At the time of his death, the intestate had a contract for the purchase of this land upon which but a portion of the purchase money had been paid. For the evident purpose of defrauding somebody, the administratrix went to Bailey and got him to treat the contract as forfeited for non-payment of the installments, and give her a new contract for the same land for the benefit of the other heirs and herself, then filed this petition and sold the land under it, as having belonged to her father, placed the proceeds among the assets and paid for the land out of the assets, and then took a deed " to the heirs" of the intestate; and now, coolly turns round to the purchasers and tells them that her father had no interest in the land, and that consequently she could sell them none—that the land all the time belonged to herself, and the other heirs—and that although the heirs got the benefit of the purchase money, they must now hold the land also. This maneuver is too transparent to require a moment's hesitation to treat it as it really deserves. We do not hesitate to say, that a court of equity must hold, that the conveyance which was made to the heirs was in fact made under and in pursuance of the contract of purchase with the intestate, and that the heirs must be treated as trustees holding legal title for the benefit of those who have acquired the equitable title, which was in the intestate at the time of his death.

We affirm the decree, and order that the master in chancery in the decree mentioned, execute the deeds as therein mentioned before the next term of this court, to be held in this

division, and that he report his doings herein at the said next term.

*Decree affirmed.*

After the foregoing opinion had been recorded, Mr. Goudy, for the plaintiff in error, filed a petition for a re-hearing, which was granted. After the cause had been again heard, the following opinion was announced. [REPORTER.]

CATON, C. J. As some of the questions involved in this suit are of very great importance, a re-argument of this cause was ordered after an opinion had been filed affirming the decree below. The whole case has been again considered by the court, with the additional light afforded by the re-argument, and we are very clear that the judgment affirming the decree, and the opinion which was filed, should be adhered to. There is one point which was presented upon the first argument, and has again been urged upon this, which was not sufficiently noticed in the opinion, and which will now be considered.

It is insisted that before the last sale was made, there were no debts remaining unpaid, and consequently the power of the administratrix was necessarily exhausted, there remaining no legal object for which the land could be sold. Now this may be so as to the debts which had been allowed and entered of record by the County Court, but we are not prepared to find it was so in point of fact. Certain it is that there were debts against the estate which were paid in part at least out of the proceeds of those lands, and which it did not suit the purposes of the administratrix ever to have presented or allowed against the estate. Such was the case of the entire purchase money for the land which was due to Bailey, and every dollar of which, according to the testimony of Mr. Waughop, was paid out of the assets of the estate, and the last payment, at least, was made out of the proceeds of the sale of these lands. Now certainly as between third parties, if not always and everywhere, those were good and valid payments. This was a legitimate claim against the estate, and the administratrix, by paying it out of the assets, no doubt took the responsibility

of proving that the claim was a valid one, when called to account for such payment.

But conceding the utmost that is claimed, that enough money had been raised by the first sale of lands to pay all the debts, and we still think that the last sale was not void. The court had complete jurisdiction of the matter, and in the exercise of that jurisdiction it decreed that all of the lands mentioned in the petition, specifying and describing them particularly, should be sold to pay the debts of the estate. Surely, if here was jurisdiction in the court to make this decree, it furnished authority to the administratrix to make the sale. It may have been an erroneous decree, but it was not void. To hold that every purchaser at such a sale shall go and see that in truth there are debts owing by the estate sufficient to require the sale of the particular land, at the peril of getting nothing by his purchase, would drive all prudent men from such sales, and leave only sharpers and speculators as purchasers, and enable them to get the lands at mere nominal prices, or at least at most ruinous sacrifices. No surer plan could possibly be devised to make estates insolvent, and to fritter away the real estate of heirs and devisees.

We adhere to our former decision, and affirm the decree.

*Decree affirmed.*

Mr. Justice WALKER, dissenting.