Henry Hoermann died intestate in Cascade county on January 23, 1938, leaving property therein. He left surviving him two brothers and a sister but no wife, issue, father or mother. Letters of administration of the estate were issued to Larry Yule, based upon the nomination of Clarence E. Hoermann, who claimed to be the adopted son and sole heir-at-law of the deceased.
Thereafter E.J. Liptak, the public administrator of Cascade county, petitioned the court to revoke the letters issued to Yule and to appoint him. He based his right to letters upon nomination of one of the surviving brothers of the deceased. Yule made a motion to dismiss the petition of Liptak. The entire matter came on for hearing before the court without a jury, resulting in an order dismissing the petition of Liptak for revocation of the letters and sustaining the motion of Yule. The appeal is by Liptak.
The question presented is: Was there sufficient competent evidence to justify a finding that Clarence Hoermann was the adopted son of the deceased? Unless he was, he, of course, would not be entitled to administer the estate (sec. 10068, Rev. Codes), or to nominate another to do so (sec. 10082) ahead of the right of the brother.
The records disclose that on March 3, 1908, Martha A. Shields, while single, adopted Clarence Earnest Lynn, who was then about fifteen months old. The adoption was in every respect according to the statutes of this state, and took place in Lewis and Clark county. The order of adoption was signed by J.M. Clements, then district judge. Thereafter Martha A. Shields married Henry E. Hoermann and certain proceedings were had looking to the adoption of the child by Henry Hoermann and changing his name to Clarence E. Hoermann. Appellant contends that these proceedings were null and void and insufficient to constitute an adoption. *Page 389 
The court records relating to the latter adoption consist of a court order reading:
 "In the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark.
"In the Matter of the Adoption of Clarence Ernest Lynn, a Minor.
"Whereas on the third day of March, A.D. 1908, upon the petition of Martha A. Shields duly filed with the Clerk of this Court an order was entered to the effect that the above named minor child be lawfully adopted by the said Martha A. Shields, and by the order of the Court then duly made and entered the said minor was adopted by the said Martha A. Shields to the effect that thereafter the said Minor should bear towards the said Martha A. Shields the relation of parent and child,
"Whereas it thereafter appearing to the satisfaction of said Court that the said Martha A. Shields was duly married to H. Hermann, and that they are and have been ever since husband and wife,
"It is therefore ordered that the said minor child shall hereafter bear the relation of parent and child to the said Mr. and Mrs. Hermann, and that said minor child shall bear the name of Clarence E. Hermann.
"Done this 8th day of October, A.D. 1914.
"J.M. CLEMENTS."
There was also a minute entry of the same date reading:
 "In re Adoption of Clarence Ernest Lynn, a Minor.
"In this matter it appearing to the satisfaction of the court that Martha A. Shields, who had adopted said minor, was duly married to H. Hermann, and that they are and have been ever since husband and wife, Court ordered that said minor child shall hereafter bear the relation of parent and child to the said Mr. and Mrs. Hermann, and that said minor shall bear the name of Clarence E. Hermann.
 "______________________, "Judge Presiding."
Appellant contends that the adoption order was and is void on its face and subject to collateral attack. The gravamen of *Page 390 
his contention is that the consent of Mrs. Hoermann to the adoption of her adopted son by Mr. Hoermann, and his agreement to adopt, must appear in the record of the adoption proceedings, and that without them the adoption was void for want of jurisdiction to make the order. Additionally he contends that oral evidence was improperly received to show that consent and agreement were in fact executed.
The statutes governing proceedings on adoption at the time the proceedings in question were taken were sections 3766 and 3767, Revised Codes of 1907, reading:
"3766. * * * The person adopting a child and the child adopted, and the other persons, if within or residents of this state, whose consent is necessary, must appear before the judge of the district court of the county where the person adopting resides, and the necessary consent must thereupon be signed and an agreement be executed by the person adopting to the effect that the child shall be adopted and treated in all respects as his own lawful child should be treated. If the persons whose consent is necessary are not within or are not residents of the state, then their written consent duly proved or acknowledged, according to sections 4656 (1602) and 4657 (1603), of this code, shall be filed in said district court at the time of the application for adoption."
"3767. * * * The judge must examine all persons appearing before him pursuant to the last section, each separately, and if satisfied that the interests of the child will be promoted by the adoption, he must make out an order declaring that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting."
It will be observed that section 3766 required the written consent to be filed only when the person whose consent was necessary was not within or was not a resident of the state; otherwise the statute did not specifically require either the consent or the agreement to be filed. It did not even require the filing of a written application to adopt.
Appellant's contention is that since adoption proceedings were[1] unknown to the common law, and since they are authorized *Page 391 
by statute by conferring special jurisdiction on the district courts, every fact essential to the exercise of the special jurisdiction conferred must appear affirmatively from the record. There is authority supporting this view; in fact, this court so stated in State ex rel. Thompson v. District Court, 75 Mont. 147,242 P. 959. The tendency of recent cases is to the contrary. Thus, in 2 C.J.S., Adoption of Children, section 51, p. 443, it is said: "In accordance with the modern tendency to give adoption statutes a liberal construction to effect their benevolent purposes and to promote the welfare of the child, as pointed out above in paragraph 6 of this Title, in several jurisdictions it is held that a decree of adoption is entitled, upon a collateral attack, to the usual presumptions upholding judgments of courts of general jurisdiction. Consequently it will be presumed that statutes requiring abandonment, notice, consent of the parent or of the child, that the natural parents be dead and that the adoption be for the child's best interest, that the child's residence be within the county, that the petition be presented in the proper county, and that the findings of the court be based upon proper evidence, have been satisfied. * * * A record that the child was duly adopted imports absolutely verity in a collateral proceeding, and it will be presumed that the provisions of law relating to adoption have been legally complied with."
In Martin v. Fisher, 25 Ohio App. 372, 158 N.E. 287, 288, the court on this point said: "Said section 8025 of the General Code, in part, provides: `All such consents to such adoption shall be acknowledged and witnessed.' This section of the General Code is mandatory, and, in order to perfect a legal adoption, it must be strictly followed. But a careful examination of the record fails to reveal that it has not been complied with. It is true that the consent of the mother to the adoption, as shown by the paper writing marked plaintiffs' Exhibit A, is neither acknowledged nor witnessed. It is also true that the record is silent as to an approval of the mother's consent to the adoption by the court which granted the divorce decree. But the record does not show that such consent and approval were not, in fact, *Page 392 
otherwise, and in accordance with the statute, given and obtained; and, in the absence of such a showing, it must be presumed that they were. By consent of the parties the record of adoption is as set forth in the answer and return, and nowhere therein is it alleged that such lawful consent and approval were not so given and obtained. A presumption of law, that all the provisions of the law relating thereto were complied with, arises from a decree of adoption, and this presumption subsists until overcome by proof to the contrary. (Lawson, Law of Presumptive Evidence (2d Ed.) rule 10, p. 36.)" To the same effect areJossey v. Brown, 119 Ga. 758, 47 S.E. 350, and Shirley v.Grove, 51 Ind. App. 17, 98 N.E. 874.
This question was before the court in the case of In reDingman, 110 Wn. 513, 188 P. 755, 757, and the court quoted extensively from section 123 of Freeman on Judgments, as follows: "The doctrine that the judgments of the courts of record are of any less force, or are to be subjected to any closer scrutiny, or that they are attended with any less liberal presumptions, when created by virtue of a special or statutory authority, than when rendered in the exercise of ordinary jurisdiction, has been repudiated in some of the states; and the reasons sustaining this repudiation have been stated with such clearness and force as to produce the conviction that the doctrine repudiated has no foundation in principle, however strongly it may be sustained by precedent. * * * But, outside of authority, there seems to us to be no reason which supports the distinction sought to be maintained. The reason why verity is imputed to the judgment of courts that are called courts of general jurisdiction or courts of record, as distinguished from courts of limited jurisdiction or inferior courts or tribunals, doubtless is that courts of the first class are presided over by men who are presumed to be learned in the law, aided and advised by practitioners who are also learned in the law; while courts of the other class are presided over by men of more limited learning and experience. But certainly it is the court upon which the distinction is conferred, rather than the accident or circumstances under which the same court is dealing on different occasions. The judgment *Page 393 
of the court is equally entitled to credit whether the jurisdiction is generally or specifically conferred. Under the provisions of our Constitution the superior court is constituted a court of general jurisdiction, and it remains a court of general jurisdiction in the exercise of all its judicial functions, no matter whether it is exercising its jurisdiction under the provisions of the common law, of the Constitution, the probate, or any other branch of statute law. To be compelled to stop to inquire and determine whether the jurisdiction conferred upon the court was a common-law power, or whether it was expressly conferred by constitutional or statutory enactment, before the validity of its judgment, or the verity to be imputed to such judgments, could be determined would be unnecessary, inconvenient, illogical, and confusing, and not in harmony with the spirit of our Code and Constitution." (See, also, 1 C.J. 1394; 1 Am. Jur., 636, 637, 675.)
The Montana Constitution in section 11 of Article VIII gives[2] district courts general jurisdiction "of all matters of probate; of actions of divorce and for annulment of marriage, and for all such special actions and proceedings as are not otherwise provided for." When exercising jurisdiction in matters of probate the district court is a court of record, exercising general jurisdiction as such. (In re Baxter's Estate, 101 Mont. 504,54 P.2d 869.) Adoption proceedings, if they do not constitute matters of probate, clearly fall within the clause "all such special actions and proceedings as are not otherwise provided for," within the meaning of the above section of the Constitution, and the court, when acting in adoption proceedings, is exercising jurisdiction as a court of record and not as a court of limited jurisdiction.
The statement relied upon by appellant from the ThompsonCase, supra, was unnecessary to a decision of that case, since that was a direct and not a collateral attack on the judgment. We think it is out of harmony with the trend of recent authorities, and that it has but little, if any, support in reason and should be and is overruled. In the Thompson Case the court made this statement: "The record does not include the consent *Page 394 
of the mother of the child, and since such consent, if given, must have been in writing and would have constituted a part of the record, its absence is conclusive evidence that it was not obtained — indeed, it is conceded that the mother did not give her consent." This statement is relied upon by appellant here. It, too, was unnecessary to the decision in that case when it was conceded that the mother had not given her consent.
Since the decision in the Thompson Case the statute has been[3] amended by inserting in it the following: "In any case where the consent of a parent does not appear of record in the adoption proceedings heretofore or hereafter had, such adoption shall nevertheless be valid as against everyone excepting such parent; and shall be invalid as to him only in those cases where his consent is required under section 5859." (Sec. 5861, Rev. Codes.) Hence, so far as consent is concerned, the effect of this amendment was to validate all adoptions where the consent of the parent did not appear of record as against everyone but the nonconsenting parent. Here the only one whose consent was necessary was Mrs. Hoermann formerly Martha A. Shields. She is not complaining of the adoption proceedings but, in fact, gave testimony in support thereof. The proceedings in question here were in conformity with the statutes existing when they were had. We will presume that consent was signed and agreement to adopt executed, to support the order of adoption. The order of adoption is, therefore, valid on its face. If it were in fact invalid, it would become so by evidence dehors the record. The attack here, unlike that in the Thompson Case, is collateral.
Appellant offered testimony that deceased at the time of the adoption was not a resident of Lewis and Clark county. Respondent produced evidence from which it could be found that he was a resident of Lewis and Clark county at that time. That made the question one of fact for the court to determine if the question was proper for the court's consideration. However, on collateral attack by a stranger to the adoption proceedings, this question cannot be considered.
Lack of residence does not appear from the record. That was[4, 5] one of the issues to be passed upon and determined *Page 395 
at the time of the adoption proceedings. It did not affect the jurisdiction of the court. To make an order without proof of residence in the county would have been error, but not in excess of jurisdiction, and neither Mr. nor Mrs. Hoermann, nor those claiming through them, could object to the order collaterally on that ground.
In Coleman v. Coleman, 81 Ark. 7, 98 S.W. 733, 734, the court in speaking on this point said: "Appellant contends that the order is void and subject to collateral attack because it does not recite that it was shown by two witnesses that the residence of the father was unknown. But the jurisdiction of the court did not, in our opinion, depend on such evidence, nor was it necessary to make such a recital in the record. Making the order of adoption without such proof would be error, and might be ground to set such order of adoption aside on petition of the father of the adopted child, but neither D.L. Coleman, on whose petition the order of adoption was made, nor any one claiming through him as plaintiff does, would be allowed to object to the judgment on that ground. (Nugent v. Powell, 4 Wyo. 173,33 P. 23, 20 L.R.A. 199, 62 Am. St. Rep. 17; Van Matre v.Sankey, 148 Ill. [536] 553, 36 N.E. 628, 23 L.R.A. 665, 39 Am. St. Rep. 196, and note; Estate of Williams, 102 Cal. 70,36 P. 407, 41 Am. St. Rep. 163; Appeal of Wolf, (Pa.),13 A. 760 [10 Sad. 139].)"
In Parsons v. Parsons, 101 Wis. 76, 77 N.W. 147, 149, 70 Am. St. Rep. 894, the court, in treating of this legal question, said: "It is further contended by appellant that the county court did not have jurisdiction, because consent to the adoption was not given by the next of kin. Whether the person who signed as next of kin was such in fact was one of the questions which the court had jurisdiction to determine. It was not requisite to jurisdiction that it should be determined right. The trite saying applies, that every court has jurisdiction to err in any case, but mere error in determining something the court has a right to determine is irremediable by challenge to the jurisdiction of the court. That the county judge had jurisdiction to determine that W.S. Russell was next of kin to the adopted child, cannot *Page 396 
reasonably be questioned. That the fact was judicially determined appears upon the face of the order. True, it was determined by the verified petition only, so far as appears by anything in the proceedings, but, as stated before, that was not material to the jurisdiction. If determined without any evidence whatever the result would be the same. No doubt it was competent for the county judge to have required other evidence than the petition, but he was not bound to do so. If satisfied of the fact by the petition itself, whether satisfied right or wrong, it was sufficient for the validity of the proceedings. The rule on that subject was definitely stated by Mr. Justice Winslow in Cody v.Cody [98 Wis. 445] 74 N.W. 217, to the effect that three things only are necessary to give jurisdiction in an action or proceeding: First, a tribunal legally organized; second, jurisdiction of the subject-matter; third, jurisdiction of the person; and these things all being present, jurisdiction continues, however erroneous the proceedings leading up to the result finally obtained, unless one of the elements be in the meantime lost. * * *
"The proceedings to avoid the judgment of adoption, are clearly of an equitable nature, and after the lapse of many years during which time the status of the subject of adoption has been recognized as legally fixed by the judgment of the county court, by all parties to the proceedings, one of those parties on whose motion the judgment was rendered is in no position to appeal to the equity powers of the court to declare it void. The plainest principles of estoppel apply to the situation. Appellant petitioned for the judgment. It was entered on her motion. The person most interested, the child, was a ward of the court, and its status for life was entirely and irrevocably changed by the result of the proceedings if they were valid. Their validity was recognized by the appellant till she become pecuniarily interested in changing her position. Clearly, she cannot be aided by a court of equity to do that to the injury of the person she was instrumental in locating in her family as her adopted son." The same reasoning applied in that case *Page 397 
would prohibit a stranger to the adoption proceedings from questioning their regularity as to proof of residence in a collateral proceeding.
In Barnard v. Barnard, 119 Ill. 92, 8 N.E. 320, 323, the court said: "We have seen the statute requires that the name of the father shall be stated, and that he consents to the adoption; but this is only in the event that he is alive, and has not abandoned the child; for if he be dead, or if he be alive and has abandoned the child, it is only necessary to state the name of the mother, and that she consents to the adoption. The fact of the father's death or abandonment is not required to be affirmatively stated. It may be that good pleading requires that such a statement should be made, and that its omission would be fatal in a direct proceeding, as to which we express no opinion. The statute only requires, as a jurisdictional fact, that the parent be named who has the actual custody and guardianship of the child, and that it be shown that that person consents to the adoption. It is not required that it shall be stated in the petition, or otherwise affirmatively shown, that the petitioner resides in the county. In this proceeding it will be presumed that the court heard proof of the facts which required it to decree as it did. (Stow v. Kimball, supra [28 Ill. 93, 107];Fitzgibbon v. Lake, 29 Ill. [165] 177 [81 Am. Dec. 302];Schnell v. Chicago, 38 Ill. [382] 390 [87 Am. Dec. 304];Housh v. People, 66 Ill. [178] 181; Moffitt v. Moffitt, 69 Ill. [641] 646; Henline v. People, 81 Ill. [269] 271;Bostwick v. Skinner, 80 Ill. [147] 152.)"
Here there was evidence showing that ever since the adoption[6] all parties to it have considered it valid and have acted upon the belief that a valid adoption took place. This evidence was properly admitted where, as here, the attack is collateral and by one who is a stranger to the adoption proceedings.
If the court at the time of the adoption order erroneously found that Mr. Hoermann was a resident of Lewis and Clark county, that question cannot at this time be raised in a collateral attack on the order of adoption. *Page 398 
The order of the court dismissing the petition of Liptak was proper. The order is affirmed.
MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, STEWART and ERICKSON concur.