No. 14,725.

In re Heirs of Zupancis.
Zupancis v. Zupancis.
(111 P. [2d] 1063)

Decided March 17, 1941. Rehearing denied April 7, 1941.

Mr. MATT J. KOCHEVAR, Mr. RILEY R. CLOUD, for plaintiff in error.

Mr. WILLIAM WEISER, Mr. EUGENE H. MAST, for defendant in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

JULIUS J. ZUPANCIS, whose estate is here involved, died intestate February 19, 1936. His widow, Mary Zupancis, plaintiff in error, seasonably **petitioned for,** and was granted, letters of administration on the estate by the county court of Pitkin county. In such petition and in the affidavit of heirship contemporaneously filed pursuant to section 16, chapter 176, '35 C. S. A., it was alleged that she, as the surviving widow, and the defendant in error, a minor, as an adopted son, were the

sole heirs of the decedent. In July, 1939, in connection with the final settlement of the estate, as is permitted by section 13, chapter 176, '35 C. S. A., plaintiff in error filed her verified petition for determination of heirship naming herself and Louis as those who claimed to be heirs of the decedent, and giving their respective relationship to him as "widow" and "alleged adopted son." Coincidentally, there was filed what was designated as an "amended affidavit of heirship" listing Mrs. Zupancis as the sole heir of her deceased husband. At the time of the hearing this affidavit was stricken from the files by the county court as having been filed without leave and later, following the hearing, a like affidavit was tendered for filing and appears in the record so marked. Upon such hearing the county court determined that both the widow and Louis were heirs and decreed accordingly. Plaintiff in error appealed from this decision to the district court, where, after trial de novo, the same conclusion was reached as in the county court. Still feeling aggrieved the widow then instituted this proceeding in error to review the adjudication of the district court.

As requiring a reversal plaintiff in error contends that the decree of adoption entered by the county court of Pitkin county, which was considered below as according Louis the status of heirship as a son of the decedent, was null and void on what are said to be jurisdictional grounds. As the statutory basis of the proposition advanced, plaintiff in error cites sections 1 and 3, chapter 4, '35 C. S. A. The pertinent portion of said section 1 is as follows: "Any inhabitant of Colorado, not married, or a husband and wife jointly, may petition the juvenile court of the county, or city and county, or, if no juvenile court exists therein, then the district or county court, of the county of his or their residence or of the county of the residence of the person sought to be adopted, for leave to adopt a minor child, not his or theirs by birth, and for a change of the name of

such child, as herein stated. * * *." Section 3 provides: "When the petition is filed by husband and wife, the court shall examine the wife, and shall refuse leave for such adoption unless satisfied from such examination that the wife, of her own free will and accord, desires the same."

The questioned adoption decree, dated September 4, 1934, recites that Julius J. Zupancis, now deceased, was the petitioner; that his residence was in Pitkin county, and in usual form declared Louis J. Zupancis, whose name was changed therein to such, to be the adopted child and legal heir of said petitioner. Stated in the language of her counsel, it is the contention of plaintiff in error that the adoptive decree was void for the reason that the deceased "as a single person" petitioned "the court for leave to adopt the said Louis J. Zupancis when in fact" the petitioner "was a married man, and his wife," plaintiff in error "was not a party to said proceedings, was not mentioned therein, was not examined as required by statute, was given no notice thereof and knew nothing about the same."

Preliminarily, for a better understanding of our views on the contentions advanced, we deem it advisable to mention certain legal principles pertaining to this proceeding before disposing of the specific points in controversy. It is certain that where the validity of a decree of adoption is questioned in any proceeding other than a direct appeal or a petition to set aside the adoption, the attack is collateral. 2 C. J. S., p. 440, §50,a. Accordingly, since the question is raised here in a proceeding to determine heirship in the course of the settlement of the estate of the alleged adoptive parent, the rights of the parties must be adjudged upon the law applicable to collateral attacks upon judgments. In this circumstance, in the light of plaintiff in error's assignments, it is of primary importance to consider whether an adoption decree entered by a county court in Colorado has the benefit of the presumption of

jurisdiction which attaches to judgments of courts of general jurisdiction, or whether it is subject to the narrower rule applicable to courts of limited jurisdiction, or to the special proceedings of courts of general jurisdiction which are not in the course of the common law. If the questioned adoption decree is regarded as one governed by the rule as to courts of limited jurisdiction, the decree is open to attack unless the jurisdictional facts appear affirmatively from the record. Plaintiff in error claims that in adoption proceedings a county court is within the latter classification and as supporting this view cites: *Keal v. Rhydderck,* 317 Ill. 231, 148 N. E. 53; *Kennedy v. Borah,* 266 Ill. 243, 80 N. E. 767; *Watts v. Dull,* 184 Ill. 86, 56 N. E. 303, 75 Am. St. Rep. 141; *Davis v. McGraw,* 206 Mass. 294, 92 N. E. 332; *Taber v. Douglass,* 101 Me. 363, 64 Atl. 653, and *Pugh v. Cox,* 185 Wis. 33, 200 N. W. 686. If, on the other hand, as defendant in error asserts, such adoption decree is given the standing of a judgment of a court of general jurisdiction, the lack of jurisdiction must appear from the record itself before such decree is subject to collateral attack. See, 1 Am. Jur., pp. 675, 676, §78.

It may be doubted whether *Taber v. Douglass, supra,* and *Pugh v. Cox, supra,* really lend support to the contentions of plaintiff in error, since the language of the first seems to indicate that probate courts in Massachusetts, differently from county courts in Colorado, inherently have only a limited jurisdiction in all matters. The second case is distinguished because there the attack on the adoption decree was direct and not collateral as here. The remaining cited decisions which seemingly adhere to the limited jurisdictional rule in such proceedings, do so upon the theory that the powers conferred under adoption statutes generally are special in character and not exercised according to the course of common law, but in derogation thereof, as a consequence of which a court, while proceeding thereunder, must be treated as a tribunal exercising limited and

special powers and nothing will be presumed to be within its jurisdiction in such matters which does not distinctly appear to be so. As being typical, see *Watts v. Dull, supra.* Contrarily, and in accord with the modern tendency to give adoptive statutes a liberal construction, to effect their beneficent purposes and promote the welfare of the child, many courts have abandoned the narrow view last above stated upon the ground that adoptive statutes are not intended to derogate or supplement the rules of common law but to make a complete change in the law and that decrees in such proceedings, upon collateral attack, are entitled to the presumption attendant to judgments of courts of general jurisdiction. See, 1 Am. Jur., p. 636, §33; 2 C.J.S., p. 443, §51. Consistently, it has been held in Kansas, Nebraska and Tennessee, that in making an order of adoption a probate court is regarded as a court of general jurisdiction. *Denton v. Miller,* 110 Kan. 292, 203 Pac. 693; *Milligan v. McLaughlin,* 94 Neb. 171, 142 N. W. 675, 46 L. R. A. (N. S.) 1134, and *Magevney v. Karsch,* 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343. Also, see, *Liptak v. Yule,* 108 Mont. 386, 91 P. (2d) 394. While we never have passed on this exact point, the indicia of our decisions forecast adherence to the modern conceptions last mentioned. Illustratively, in *Dillingham v. Schmidt,* 85 Colo. 28 (273 Pac. 21), we said: "To make decrees in adoption is only one of the many items of business of the county court. It is a court of general jurisdiction within its constitutional limitations." In *Neville v. Bracher,* 94 Colo. 551, 31 P. (2d) 911, where a collateral attack on a juvenile court adoption decree was grounded, inter alia, on the objection that the adoption was not consented to by the natural father of the children as required by section 1, supra, the opinion at page 553, states: "The consent of a parent to adoption is not required where that parent has abandoned the child. * * * We think the abandonment * * * by their father sufficiently appears from the record before

us. *If more were needed the usual presumptions in favor of a judgment lead to the further presumption of proof of abandonment before the juvenile court at the time its decree was entered."*

■ Analagously, in *Van Wagenen v. Carpenter,* 27 Colo. 444, 61 Pac. 698, where, on the theory here advanced, it was claimed that proceedings in attachment were special and the jurisdiction of the county court therein, thereby was limited and special, we held its jurisdiction was general. It is of further interest to observe that section 1, supra, of the adoptive statute confers coextensive jurisdiction therein upon the district, county and juvenile courts. In the light of the foregoing we have no hesitancy in now holding that a decree of adoption entered by a county court is entitled to the benefit of all the presumptions of jurisdiction which attach to judgments of courts of general jurisdiction. In such case the process of examination for infirmity upon a collateral attack, as distinguished from a direct assault, is accurately prescribed in the following words of the opinion in *Kavanagh v. Hamilton,* 53 Colo. 157 (125 Pac. 515): "If an inspection of the record proper furnishes the facts showing that the court acted without jurisdiction, the judgment is void and may be collaterally attacked. If, on the other hand, the record does not show this jurisdictional infirmity, or does not furnish the evidence of nullity, or if it shows or recites jurisdictional facts which are untrue, the judgment is voidable. The attack upon it, however, in such a case, must be direct, for the purpose of establishing by other evidence the untruthfulness of the record. * * * If the judgment is void, the source of the evidence to prove it, is the judgment roll and the attack may be collateral. Whereas, if it is voidable, the evidence to prove it void must come from some source other than the judgment roll, and the attack must be direct, and cannot be collateral." So, unless it is apparent from the very face of this adoption record itself that the decree

is void, a collateral attack may not be made thereon for matters de hors that record. See, also, *In re Peppin's Estate,* 53 Mont. 240, 163 Pac. 104. Since the adoptive record is silent as to the petitioner's marital status and does not even so much as suggest that he was married when the decree was entered, it is obvious that in this proceeding for the determination of heirship, evidence of a marriage of deceased and plaintiff in error in 1925, admittedly received solely to establish the widow's heirship, may not be considered collaterally as the basis for such an assault on the adoption decree by assumption or otherwise. If plaintiff in error has recourse by reason of the substantive circumstance alleged, upon which subject we express no opinion, it must result from a direct attack on the adoption decree.

 With the *fact* of marriage thus eliminated from consideration in the proceeding at bar, there only remains for determination the question of whether by the face of the adoption record lack of jurisdiction is portrayed. On this aspect plaintiff in error claims the adoption was void because the petition and decree "both fail to show that the decedent was 'an inhabitant of Colorado, not married'." See, section 1, supra. We think the allegation of the petition and the recital in the decree to the effect that petitioner was a resident of Pitkin county sufficiently establishes affirmatively that he was "an inhabitant of Colorado." As is evident from a casual reading, the statute does not prescribe the form of the petition nor expressly direct what it shall contain. It is merely recited that "any inhabitant of Colorado, not married, or a husband and wife jointly, may petition * * *." Section 1, supra. Thus, where an adoption petition is presented, signed by one person only, who therein states that he is a resident of the county in which the presentation is made, with no contradictory or equivocal recitals whatsoever, we think it must be regarded that the petitioner is sufficiently identified as an unmarried inhabitant of Colorado and

that the court has jurisdiction to proceed on that premise. In case of collateral attack on the resultant decree, in the light of legal principles hereinabove mentioned, an extraneous showing of the private knowledge of the judge of such court of contradictory import properly may not be noticed. From the circumstance that Louis, from his infancy had been continuously supported, maintained and reared in the home of the decedent, both before and after his alleged marriage to plaintiff in error, with no expression of disapproval or protest by her, and her admitted belief, previous to the advancement of the legal questions here raised, that Louis was the adopted son of decedent, the trial court further believed that an estoppel arose against the plaintiff in error precluding her from asserting the invalidity of the adoptive decree. The doctrine that estoppel may so operate under certain circumstances is established by many authorities (1 Am. Jur., p. 676, §79; 2 C. J. S., p. 442, §50 [2] e.), but in view of our disposition it is unnecessary that we determine this phase of the controversy.

The judgment is affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK, MR. JUSTICE YOUNG and MR. JUSTICE BURKE concur.