No. 11.—F. Phinizy and another, adm'rs, &c. plaintiffs in error, vs. Selina A. Few, defendant in error.

[1.] A testator bequeathed to his married daughter, in trust, for her sole and separate use, certain negroes, naming them; and if she died without child or children, born of her body and living at her death, in that case, the property was to revert to his estate and be equally divided between certain grand-children : *Held*, 1st. That the will created an executory devise in favor of the grand-children. 2ndly. That the executory devisees might elect either to take the property bought with the proceeds of that originally bequeathed to them, or assert and enforce their *lien* upon the same in a Court of Equity, for the fund so expended. 3dly. That notice to a purchaser of the property thus acquired, before the payment of the money, would bind him to the same extent and in the same manner, as the trustee from whom he bought; and 4thly. That this incumbrance upon the title, would constitute a good defence, either at Law or in Equity, against the payment of the purchase money.

Assumpsit, &c. in Clark Superior Court. Tried before Judge Jackson, February Term, 1855.

The following items appeared in the will of Thomas Carr, deceased :

9th. I give and bequeath unto my son, William A. Carr, and Col. Nicholas Ware, in trust, (who I hereby constitute and appoint trustees for the purposes herein named,) the following negroes, for the sole use, benefit and behoof of my daughter, Selina A. Few, wife of Col. Ignatius A. Few, viz: Lett and her children, Sarah, Lancaster, and Cornelia ; also Ben and his wife Else, with their future increase; these negroes to be hired out, and the money arising from their labor to be paid by my said trustees to my said daughter, Selina, free from the control of her said husband, Col. Ignatius A. Few.

11th. All the rest and residue of my estate, both real and personal, not herein disposed of, I will, and bequeath, and devise in the following manner, viz : one half thereof to my grand-children—the children of my daughter, Susan B. Ware—to them, their heirs and assigns, forever, to be equally divided amongst the whole of them, share and share alike. The

other half I give unto my son, William A. Carr and Col. Nicholas Ware, in trust, for the sole use and benefit of my lovely daughter, Selina A. Few, free from the control of her husband, Col. Ignatius A. Few, to be by my aforesaid trustees vested in bank stock or some other productive fund, and the increase arising therefrom to be paid to my said daughter annually.   And such other negroes as may fall to her lot or share, to be disposed of in the same manner as is prescribed for Lett and her children.   And should my said daughter, Selina A. Few, survive her said husband, Col. Ignatius A. Few, then and in that case, the trust herein created in my son, William and Col. Ware, shall cease; and the property, both real and personal, so bequeathed in trust, shall vest in my said daughter Selina, and be then delivered in her full possession by my said trustees: Provided, nevertheless, that if my said daughter Selina die without a child or children, born of her body and living at the time of her death, then and in that case the said negroes and other property, real and personal, so herein bequeathed, shall revert to my estate, and be thereafter equally divided among the children of my son, William A. Carr, and my daughter, Susan B. Ware, share and share alike."

In 1839, Carr was removed as trustee, and Graves appointed.   In 1843, Graves was removed, and Col. Few appointed. In 1845, Col. Few died.

In 1850, Mrs. Few sold to Jacob Phinizy a house and lot in Athens, and the contract was reduced to writing, by which she bound herself to make to Phinizy " good and sufficient titles" to the same ; and he was to pay her $1800 therefor. She afterwards tendered him a warranty deed, which he refused, on the ground that he had been notified by Carr that his children had an interest in remainder in the premises. She then sued Phinizy on the contract; and upon the trial of that cause, the questions arose now brought up for review.

It was in evidence that Mrs. Few paid for the lot herself. A deed was made to one half of it in Col. Few's lifetime,

to him, as trustee for her. It was also in evidence that she paid for the building of the house. It was admitted that Col. Few, as trustee, collected from Carr $600, and that Graves, as trustee, paid over $500, which went into Mrs. Few's possession. After the death of Thomas Carr, the Government of the U. S. granted to his heirs a large quantity of Alabama lands, which William A. Carr, as executor, sold, and invested Mrs. Few's share in rail road stock and a negro Isaac. This negro Isaac was afterwards sold. Carr, as trustee, turned over to Graves 42 shares of rail road stock and six negroes, viz: Ben, Letty, Jacob, Sarah, Sam and Isaac. Mrs. Few had no property now, except the five negroes and this house and lot. Col. Few died insolvent—no administration on his estate. The rail road stock was transferred to Emory College by Graves. Carr, as guardian for his children, has given notice to the rail road company, and also to Emory College, that they would follow the stock at Mrs. Few's death. Col. Few said to Mrs. Few, in his last illness, "here is a house and lot purchased with your own money."

Counsel for Phinizy requested the Court to charge—

1. That if the Jury believed, from the evidence, that the land in question was purchased with the *corpus* or principal of the estate held by Col. Few, in trust for his wife, that then the rights of the executory devisees attach on the property, and the plaintiff cannot recover.

2. That although the lot may have been purchased with the income of said trust estate, yet, if said estate has been diminished by the plaintiff since it came into her possession, or by her trustee, with her consent, that then the executory devisees have the right to have said property (though bought with income) substituted in place of the principal so parted with to the value thereof; and the plaintiff, if such are the facts, cannot recover.

3. That if they believe that a part of the land is subject to the claim of the executory devisees after Mrs. Few's death, that the defendant cannot be compelled to take the remainder, and the plaintiff cannot recover.

4. That if the Jury were in doubt as to the facts on which the offered title was based, that they must find for defendants.

The Court declined so to charge, but charged the Jury as follows:

That in the view taken by the Court, it was unneccessary to charge on these points; that the trust estate, created by the will of Thomas Carr, was only for the purpose of protecting the property bequeathed to Mrs. Few from the power and liabilities of her husband, and that it ceased to exist at the death of Col. Few; that the claim of the executory devisees only attached on the property bequeathed in the will, and that unless the property in question was a portion of the identical property bequeathed in the will of Thomas Carr, Mrs. Few had a right to convey it, free from the executory devise.

To this charge and refusal to charge, defendants below (the administrators of Phinizy,) excepted; and these decisions are assigned as error.

COBB & HULL, for plaintiff in error.

T. R. R. COBB, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Court right in holding, and so charging the Jury, that the claim of the executory devisees, under the will of Thomas Carr, deceased, attached only on the *original property* bequeathed in the will; and that unless the property in question was a portion of the *indentical corpus* bequeathed in the will of Thomas Carr, Mrs. Few had a right to convey, free from the executory devise?

That the executory devisees might maintain an action against Mrs. Few for the waste of this trust property, we have no doubt. But is this their only remedy? May they not elect to take as a substitute, the property purchased with the proceeds of that bequeathed by the will? Upon the

plainest principles of equity, we are clear that they have this right. Suppose, however, that this were not so, and that the executory devisees have a *lien* only on the property so substituted for the money expended, cannot this lien be asserted and enforced? No good reason has been given why it cannot. None occurs to this Court. A testator, by his will, often encumbers a legacy with an annuity or some other burden. The legatee and those claiming under him, with notice, take *cum onere*—why may not Equity enforce this as well as a *vendor's* lien?

Whether the executory devises, therefore, had an equitable title to the house and lot, or a lien upon it merely, for the amount of the trust fund expended upon it, the result is the same. It is an incumbrance upon the title; and Phinizy, receiving notice before the purchase money was paid, is entitled to protection, either in a Court of Law or Equity. (*Wharton's Hill on Trustees, marg. p.* 165, *and Notes.*)

Whether the property in dispute was or was not bought with the trust funds, we deem it unnecessary to inquire, inasmuch as this fact was wholly withdrawn from the consideration of the Jury by the charge of the Court. If there was *any* evidence that this property was purchased, wholly or in part, with the proceeds of that originally bequeathed by Col. Carr, the plaintiff in error is entitled to a reversal of the judgment. The deed made to Col. Few *as trustee*, is some proof, however insufficient of itself. The proceeds of the boy Isaac, went into the hands of Mrs. Few, and may have gone to the payment of this property. But whether this boy falls within the executory devise in the will, will depend upon the future proof to be made in the case. The Alabama lands, it is true, were sold by Wm. A. Carr, as executor of his father, and the money was invested in Isaac and rail road stock. But if these lands were granted by the Government, directly to the heirs of Col. Thomas Carr, subsequent to his death, then this fund could not be followed and affected by the trust in the will.

We decide nothing, of course, upon this point.