JOSSEŸ *v.* BROWN *et al.* COLLIER *v.* BROWN *et al.*

By a will probated in 1850 the testator devised, in trust for his unmarried daughter L., certain slaves and land for life, with remainder to her children if any, " and if she should die and leave children, and they should not be raised and they should die, then in that case the man that she should marry to have one third, and the other two thirds to be equally divided between all my grandchildren." The daughter married ; her husband died ; she did not remarry, and died without ever having had a child. *Held :*

1. Words which in a deed would create a condition may in a will be construed as a limitation.

2. Generally where a prior estate is made to depend upon any prescribed event, and the second estate is to arise upon the determination of that event, the vesting of the prior estate is not to be taken as a condition precedent, but upon its failure the second estate takes effect.

3. Such construction generally accords with the intention of the settlor ; for when he declares that the property is to go from one beneficiary to another, and thence to still others, he has indicated that each of those named is preferred over his heirs or the other objects of his bounty.

4. Where there has been the creation of a line of successive estates, the elimination of any intermediate interest accelerates the time for the vesting in possession of those subsequent thereto.

5. Here the birth of children was not a condition precedent to the right of the husband to take under the will.

6. The gift over to the husband was not conditional on the birth of children, but was subject to a limitation by which it might never be enjoyed if the wife had a child who reached maturity.

7. The gift over to the husband, having to take effect within twenty-one years after the death of the wife, was not void as an attempt to create a perpetuity.

8. Where there is a devise to an unmarried woman, and, on failure of children to attain twenty-one years, then over to the husband, the first person answering the description of husband is entitled to take.

9. There was no such uncertainty of the person who was to take as husband as to prevent his interest from being devisable or descendible.

10. Whether the estate devised to him was a contingent remainder and descendible to his heirs as they existed at the time of his death, under the Civil Code, §3101, or an executory devise descendible to those answering the description of heirs at the time of the death of the life-tenant, is immaterial here.

11. There is nothing in the record to indicate that the wife waived her dower in the husband's general estate or elected to take a child's part.

12. In the absence of such proof, there is no presumption that she ever had any vested estate in this or other realty of the husband.

13. On the face of the record the husband's interest in the property in controversy descended to his adopted children, who by statute were entitled to inherit from him.

14. Orders of adoption are for the benefit of the child, affect his status, are in the nature of judgments in rem, and can not be collaterally attacked.

15. All presumptions are in favor of the regularity of the proceeding, and of the jurisdiction of the superior court passing the order of adoption.

16. In the absence of evidence to the contrary it will be presumed that the order of adoption was by a proper court, and that "the judge satisfied himself of the truth of the facts stated in the petition, and that the father and mother of the adopted child had notice of the application," even though the record fails to show the residence of the child, of the petitioner, or of the parents of the child adopted.

17. Where a decree was signed February 2, 1903, and the bill of exceptions, dated April 2, 1903, recites that it was presented before the adjournment of the February term and within sixty days from the judgment complained of, the same will not be dismissed upon the ground that it was not certified in time. Civil Code, § 5539.

Argued November 24, 1903.— Decided March 29, 1904.

Equitable petition.     Before Judge Reagan.     Monroe superior court.     February 2, 1903.

On January 6, 1856, Reuben Brown made his will, giving therein a large number of slaves and valuable real estate to his unmarried daughter Lucinda.    She soon after married John H. Jossey, who died about 1875, leaving no children except those adopted.    His wife Lucinda did not remarry, and died, February 13, 1901, without ever having had born to her any child.    The case involves the determination of the question as to what disposition shall be made of real estate passing under the following provision in the will of Reuben Brown :    Said property described in the will, including the land aforesaid, "I give to my daughter Lucinda M. Brown, for her own separate support and the support and her family ; and the property nor its increase is to be made subject to the debts of no person she may marry, it nor its proceeds, but to go wholly to her support her and her children and family.    The above property I give to my daughter Lucinda M. Brown, for her own benefit and separate support, it and its increase for her and her children and family, at her death it and its increase to go to her children and be equally divided between them ; and the above property, it nor its increase nor proceeds, is not to be made subject to the debts of no persons that she may marry ; and if she should die and leave children, and they should not be raised and they should die, then in that case it is my will that all the property that I have given to my said daughter Lucinda M. Brown be put together and the man that she should marry have one third of it and its increase, and the other two'

thirds to be equally divided between all my grandchildren. And all the property and money that my daughter shall receive of my estate is to go in the way that I have left the above; and having the utmost confidence in my three worthy friends, Z. E. Harmen and John H. Thomas and Nathan Phillips, I do constitute them as my lawful trustees to the property that I have bequeathed to my daughter Lucinda M. Brown and to her children." In 1859 a bill was filed by John H. Jossey and his wife Lucinda, to construe the will of Reuben Brown. From the original record of that case, reported in 28 *Ga.* 265, it appears that Judge Cabaniss, of the superior court, held that the rule in Wild's case did not apply; that there was no provision in contemplation of an indefinite failure of issue; that under the act of 1821 (Cobb, 169) Lucinda did not take an estate tail, but an estate for life for the benefit of herself and the support of her children; that after the death of Lucinda the property was to go to the children absolutely, if they should arrive at maturity; that if there were no children born, or if those born did not reach maturity, the limitation over in favor of the husband was not void as being an effort to create a perpetuity; that there was a good devise to the wife for life, with a contingent remainder to the children in fee, and the gift over to the husband was good as an executory devise, and if the contingency of a child never happened, the devise to the husband was to take effect upon the death of the wife,— citing, in support of this last proposition, C. J. Lee, in Gulliver *v.* Wickett, 1 Wils. 105. There was a general affirmance, but this court said, "the heirs at law of Reuben Brown not being parties to the bill, we decline expressing any opinion as between them and the husband and grandchildren." *Jossey* v. *White*, 28 *Ga.* 272.

By undated orders, signed by Judge Cole of the Macon circuit, it appeared that on the petition of John H. Jossey an order was passed declaring that John Hamilton's name should be changed to John S. Jossey, and he declared the adopted son of John H. Jossey and made capable of inheriting from said John H. Jossey. By another proceeding, brought in Bibb superior court by John H. Jossey, the name of Martha Davis was changed to Mary Eliza Jossey, and she was declared the adopted child of said John H., and made capable of inheriting from said John H. Jossey. After the death of Lucinda Jossey the property is alleged to have been

taken possession of by her administrator, and certain grandchildren of Reuben Brown, remaindermen named in the extract of the will above quoted, instituted proceedings for the recovery of the land. Other descendants of Reuben Brown intervened, as did also Martha Collier and John S. Jossey, the adopted children of John H. Jossey. The chancellor construed the will, and in effect decreed that John S. Jossey and Martha Collier, adopted children of John H. Jossey, were not entitled to any interest in the property. They each filed exceptions to the ruling made, and the only question presented by both records is whether, as adopted children of John H. Jossey, they took the one third devised to the husband of Lucinda under the will of Reuben Brown.

*Cabaniss & Willingham, E. G. Cabaniss Jr., R. L. Berner*, and *J. B. Williamson*, for plaintiffs in error.

*J. E. Hall, T. E. Patterson*, and *O. H. B. Bloodworth*, contra.

LAMAR, J. (after stating the foregoing facts.)    Stripped of all unnecessary verbiage, the devise here was in trust for Lucinda for life, with remainder to her children, if any ; and if none, or those born died before reaching maturity, then over to any man with whom Lucinda might intermarry.    The heirs general of Reuben Brown insist that the birth of children was a condition precedent to John H. Jossey's right to take under the will.    We find some cases where, on the special words of the instrument, and giving effect to the testator's evident intention, it was held that the devise over was dependent on a contingency, which never having happened, the remainder could not take effect.    Moorhouse v. Wainhouse, 1 Bl. 638 ; Fearne, 365, 236 ; Andrews v. Fulham, 1 Wils. 107 ; Grascot v. Warren, 12 Mod. 128 ; Davis v. Norton, 2 P. Wms. 390 ; Sheffield v. Lord Orrery, 3 Atk. 22 ; *Oetjen* v. *Diemmer*, 115 *Ga.* 1005.    But the decided weight of authority is in favor of the proposition that the remainder over takes effect, — the estate in favor of the children being considered as a limitation rather than a condition precedent.    In other words, the birth of children and their death before maturity was not a condition to Jossey's right to take, but his interest was rather subject to a limitation by which it could not vest in possession if a child was born who attained maturity.    In many cases words of condition and contingency are to be construed as words of limitation.

Stathan *v.* Bell, 1 Cowper, 40. And words which in a deed would create a condition may in a will be construed as a limitation. Note to Simpson *v.* Vickers, 14 Vesey Jr. 347. " Whereever the prior estate is made to depend upon any prescribed event, and the second estate is to arise upon the determination of that event, the first is not to be taken as a condition precedent, but upon its failure the second estate must take place." Doe *v.* Brabant, 3 Br. 393.

These rules of construction are not merely technical, but generally accord with the intention of the settlor ; for when he declares that the property is to go from one beneficiary to another, and on certain terms thence to still others, he has indicated that each of those named is preferred over his heirs, or the other objects of his bounty. It is not like a chain where everything depending thereon falls with the destruction of any prior link, but rather the creation of a line of successive estates in which the later are accelerated in time of enjoyment by the elimination of any intermediate interest. Compare 1 Jarm. Wills * 764; Mathis *v.* Hammond, 6 Rich. Eq. 121. There are a number of adjudicated cases of high authority sustaining this view. In Horton *v.* Whittaker, 1 Durnf. & East, 346, the testator recited that his sister M. was well provided for during the life of her husband W., and therefore would not, unless she happened to survive W., want any assistance to enable her to live. He thereupon devised lands to trustees in trust that during the life of M. they should pay the rents to his other sisters, E. and B., and after the death of the husband, W., in case the testator's sister, M., should then be living, then to the use of E., B., and M., severally, during their respective lives, with remainders to their sons successively, in tail, with cross-remainders between the sisters on default of issue of their body respectively. *Held*, that the condition of the married sister, M., surviving her husband, W., did not extend to any of the limitations subsequent to her estate for life. Fearne, 235. Where there was a devise to a wife for life, and after her death to the child with which she was then supposed to be enceinte, and if such child should die before twenty-one, then the property to be divided between the wife and certain other persons named, the question was whether the devise over to the wife was good. Lord Harcourt held that it was, even though no child was born and the death of

the child under twenty-one never happened.    And in another case in which the same will was under consideration, Lee, C. J., held that the limitation over was good; that the devise to the infant, being ineffectual, was out of the case; that the law was the same, whether the devise preceding the limitation over was originally void or became so by non-existence of the infant; that since the law allows such limitation over, it allows the waiting for it; that it was one of those executory limitations which depend on some contingency.   Fearne, 511; Andrews *v.* Fulham, 1 Vesey Sr. 421.    While under this same will a distinction was made between an estate for years and an estate in fee (Ibid. t. p. 511), it was again construed in Gulliver *v.* Wickett, 1 Wils. 105, where Lee, C. J., said that there was a good devise to the wife for life, with a contingent remainder to the child in fee; and if the contingency of a child never happened, then the last remainder was to take effect on the death of the wife.

Bearing in mind the principles announced by these cases, having regard to the fact that the testament was prepared by an unskilled draftsman, and construing it as a whole, it is clear that Reuben Brown did not contemplate a partial intestacy, but intended to make a complete disposition of his property ; that in the order of nature he expected his daughter to have children, but he realized that, even if she did, they might not attain majority. His scheme, therefore, was to give to the daughter for life (*Jossey* v. *White*, 28 *Ga.* 265), and after her death to her children, if any, but if they died before reaching maturity, then one third to her husband, who was thus preferred over testator's heirs.    The estate thus created in favor of her husband was subject to a limitation by which it would be defeated by the birth of children and their attaining maturity.    Any interest conveyed to John S. Jossey necessarily had to vest in possession within twenty-one years after the death of Lucinda.    The devise over was therefore not void as an attempt to create a perpetuity.   Civil Code, § 3102.   There were no children born to Lucinda, and therefore no vesting of the intermediate estate between that to her for life and that over to the husband.    It is claimed, therefore, that he took a contingent remainder, and that his wife and children, who were his heirs at the time of his death, inherited this contingent remainder by virtue of the Civil Code, § 3101.    On the other hand it is contended that

this will, having been probated in 1850, is to be governed by the law as it existed prior to the adoption of the code; that according to the language of the will the estate limited to Jossey was to take effect after the base or determinable fee in the children; that a fee could not be limited on a fee in a deed; that the limitation over could only be good by way of executory devise; and that executory devises and possibilities of reverter descend to those answering to the description of heirs when the estate falls in at the death of the life-tenant — being here the adopted children. *Payne* v. *Rosser*, 53 *Ga.* 662; Civil Code, §§ 3082, 3099; *Matthews* v. *Hudson*, 81 *Ga.* 120; *Phinizy* v. *Few*, 19 *Ga.* 66; *Groce* v. *Rittenberry*, 14 *Ga.* 232; *Demil* v. Reid, 71 Md. 175. We find it unnecessary, in the present state of the record, to determine whether the interest of John H. Jossey descended to his wife and adopted children who were his heirs at the time of his death, or only to the adopted children who were his heirs at the time of the death of Lucinda. There is nothing to show whether after his death the wife made an election between dower and a child's part. In the absence of such proof there is no presumption that she ever had any vested estate in this or other realty of her husband. *Snipes* v. *Parker*, 98 *Ga.* 522 (2); *Farmers Bank* v. *Key*, 112 *Ga.* 301, and cit.

The defendants in error further contend that even if the birth of children was not a condition precedent, still there was an uncertainty as to who the husband would be, and therefore the case is within the rule in the Civil Code, § 3101, which provides that "If the contingency be as to the person, and that person be not in esse at the time when the contingency happens, his heirs are not entitled." The heirs of Brown contend that the testator's purpose was to provide first for the children, and, in the event of their death before maturity, for the husband who was their father — not for a husband who was not so related to them; and that there was an evident uncertainty as to the person, since Lucinda might have married a second time, and had children by the second husband. Possibly so, but when the will was drawn it was equally possible that there might have been children by the first marriage and none by the second, or there might have been children by both marriages; and this double uncertainty as to which husband was to take, and what interest they should take in case there were

children by both marriages or none by either, emphasizes the wisdom of the rule, which, in aid of the early vesting of estates, declares that in the case of gifts to unmarried women for life, with remainder to the husband, the first who answers to the description is to be considered to have been intended by the testator as the recipient of his bounty. See Radford v. Willis, 7 Ch. App. 10; Civil Code, § 3104.

The petition for the adoption of John Hamliton by John H. Jossey was presented to the superior court of Bibb county. It recites the name of his mother, but does not show whether she was alive or dead. The petition to adopt Martha Davis was also presented to the superior court of Bibb county, and shows that the mother and father of the child were dead. The orders declaring these two children the adopted children of John H. Jossey, and making each capable of inheriting from him, are both undated. The agreed statement of facts recites that it is admitted that these orders were allowed between 1851 and 1870; presumably to cover the period between the death of the testator and the death of John H. Jossey. Inasmuch as the statute authorizing courts to pass such orders was not approved until March 6, 1856, this uncertainty in the date might have been fatal to the rights of the plaintiffs in error, but for the fact that this court takes judicial cognizance that Judge Cole, by whom they were signed, was judge of the Macon circuit only during the period between 1865 and 1873. Civil Code, § 5148; Ponder v. Shumans, 80 Ga. 506. In the case of Martha Davis, both parents being dead, no notice was necessary, and in the case of John Hamilton the presumption in favor of the regularity of the proceedings and the jurisdiction of the court must prevail in the absence of any evidence whatever to show that the court had no jurisdiction, and that no notice was given, or that there was any person entitled to notice in life at the time. Such orders fix the status of the child, are in his interest, and can not be collaterally attacked. Certainly, after the lapse of so long a time, every presumption must be made in favor of the validity of these orders. It must be borne in mind that the statute does not provide for process, nor for the form of service, but only that the judge must be satisfied of the truth of the facts of the petition, and of the further fact that such father or mother had notice of the application. Civil Code, § 2497.

*Judgment reversed. All the Justices concur.*