*Wm. Hartley Pugh* and *George Elliott Pugh*, for plaintiff.

*A. B. Dunlap* and *H. R. Weber*, contra.

## INHERITABLE CAPACITY OF ADOPTED CHILD.

[Circuit Court of Guernsey County.]

THOMAS SIMPSON v. WILLIAM LE ROY SIMPSON.

Decided, November, 1906.

*Adoption of Child—Proof Required to Establish Irregularity in Proceedings—Inheritable Capacity as to Lands in this State—Where Adoption Occurred in Foreign State—Proceedings to Pay Debts—Questions which Become Res Adjudicata—Descent—Infants—Domicile Creating Status—Section 3140.*

1. Where the record, or deed, of adoption of a child states that it was duly and legally done, in order to invalidate the adoption it must be affirmatively shown by clear proof that the adoption was irregular in some essential particular.

2. A child adopted in a foreign state has inheritable capacity to lands situated in this state.

3. In a proceeding in the probate court to sell three parcels of land to pay debts, all questions that were legally determined in such proceeding as to all the land are *res adjudicata* in a subsequent proceeding in partition of one parcel not sold in the probate court proceeding.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

This is an action in partition and is before us on appeal.

Thomas Simpson, the plaintiff, and Elizabeth Simpson were

husband and wife and lived a number of years in the state of Iowa, subsequently removing to this county.

After coming to Guernsey county, they acquired three several pieces of real estate, the title to two of which were placed in the name of Elizabeth and the other in their joint names, and so remained until the death of the wife; the parcel in their joint names being the subject-matter of this action.

While living in the state of Iowa, Elizabeth, the wife, adopted under the laws of that state a child two years of age, afterwards known as William Le Roy Simpson, who is the defendant in this action, and removed with his adopted mother and her husband to the state of Ohio, and remained with them until the mother's death, he then being a little above his majority.

After the death of his wife, plaintiff was appointed administrator of her estate, and as such administrator filed a petition in the probate court of this county to sell all of the real estate to pay debts.

In his petition in the probate court he averred that his wife died leaving "him her widower and sole heir at law having the next estate of inheritance"; but further averring that William Le Roy Simpson, whom he made a party defendant in that action, claimed to have some interest in the premises adverse to the interest of plaintiff, and asking that he be required to set it up by answer, and that the validity of his claim might be determined by the court.

William Le Roy Simpson filed an answer in which he averred that he had been duly adopted by Elizabeth Simpson in the state of Iowa under the laws of that state; pleading the law of that state and the facts constituting his adoption. The probate court upon hearing found that it was necessary to sell the real estate to pay the debts of the decedent, and further found in the decree upon the petition and answer of plaintiff and defendant, William Le Roy Simpson, and the evidence adduced, that the allegations contained in the answer and cross-petition of William Le Roy Simpson are true, and that the said William Le Roy Simpson is the only heir at law and having the next estate of inheritance from the said Elizabeth Simpson, deceased, in the premises described by plaintiff in his petition herein, and further found as follows:

"The court further finds that said Elizabeth Simpson, de-
ceased, on the 14th day of April, 1881, at "What Cheer,"
Keokuk county, Iowa, adopted the said William Le Roy
Simpson as her child, and that he is the only heir at law of said
Elizabeth Simpson, deceased, by reason of said adoption, and
that he is entitled to the next estate of inheritance from the
said Elizabeth Simpson, deceased, in the premises described by
plaintiff in his petition herein, subject to the dower right of
said Thomas Simpson."

The record shows that under this decree the entire premises
were ordered appraised and sold. Afterwards, the plaintiff filed
a motion to set aside the order to enable him to file an answer
to take his dower interest in money. This motion was granted
and the order set aside. Thereupon the plaintiff filed an
answer setting up "that he was the widower of the said Eliza-
beth Simpson, deceased, and as such he was entitled to dower
in the premises," setting forth his age and waiving the assign-
ment by metes and bounds, or in rent and profits; "and asks
the court that said premises may be sold free from his dower
estate therein; and that the value of such dower estate may be
allowed and paid him in money out of the proceeds of sale."

The court thereupon issued a new order directing the plaint-
iff to appraise, advertise and sell the premises firstly described
in plaintiff's petition free of the dower interest of plaintiff.
The title to the parcel that was directed to be sold as afore-
said was in the name of Elizabeth Simpson alone. It was
appraised and sold, the sale approved, the proceeds brought
into court; the costs were first ordered to be paid out of the
proceeds; next the dower interest of Thomas Simpson ($276.40),
paid to him, and the balance of the proceeds plaintiff as
administrator was ordered to retain to abide the further order
of the court.

This is all of the record in the case. What was done as to the
other two pieces we are not informed. Three question are
made:

First.  Was the adoption of the defendant valid under the
laws of the state of Iowa?

Second.  If it was, did he inherit the real estate in Ohio?

Third.    If not, is the plaintiff estopped from claiming the parcel involved in this action by reason of the proceedings in the probate court?

As to the first question, it is sufficient to say that we have examined the law of the state of Iowa and the facts pertaining to the adoption, and we are fully persuaded that the adoption was in all substantial and essential particulars correctly done.    We would not hold that the adoption was void except it affirmatively appear that the adoption was in some essential particular irregularly made.    (*Jossey* v. *Brown et al*, 47 S. E., p. 350.)

. The next question is: Did such adoption in Iowa confer upon the defendant, William Le Roy Simpson, inheritable capacity as to land in this state?    This question has never been decided authoritatively, so far as we know, in this state.    In Pennsylvania, in the case of *Smith* v. *Derrs, Administrators*, 34 Penna. St., 126, it was practicaly decided in the negative.    In this case it was held:

"A child born out of lawful wedlock, and legitimated by the law of another state, is not thereby rendered capable of inheriting land in Pennsylvania.

"The fact that inheritable capacity is granted by the law of another state, can not change our law of descent.

"It is the fact of birth in wedlock that gives inheritable capacity here, and not any legislative or judicial legitimation."

It is true that the question that arose in that case was not the direct one in this case.    In that case the party claiming inheritable capacity was born out of lawful wedlock but was duly legitimated by the decree of the court of the state of Tennessee under the laws of that state and on the petition of her father.    Mr. Chief Justice Lowrie in the opinion says:

"So far as our law is concerned, legitimation by subsequent marriages of parents abroad by an act of a foreign legislature or by judicial decree abroad are all fruitless.    If they are allowed to constitute inheritable capacity here, then adoption might have the same effect."

By reference to this case it will be seen that the opinion, which is very short, is founded entirely upon the case of *Doe* v. *Vardill*,

7 Cl. & Fin., 895-898; 5 B. & C., 438.    This case of *Doe* v. *Vardill*, which is critically considered in *Ross* v. *Ross*, 129 Mass., 243, was very vigorously contested, being before the House of Lords several times, and although it was finally determined that a person born in Scotland and there legitimatized by reason of the subsequent marriage of his parents in Scotland, they having had their domicile there at the time of the birth, could not inherit land in England.    That decision, however, was made, as shown by the opinions of Justice Littledale, Chief Justice Tindal and of Lord Brougham and Lord Cottenham, upon the statute of Merton and upon the settled policy of England, that no one had inheritable capacity born out of lawful wedlock, whether within or without its jurisdiction.    It was unhesitatingly admitted that the law of the domicile at the time settled domestic relations; but when it came to the question of inheriting property, that was special in its nature and the law of England must control.    Mr. Justice Littledale said:

"One general rule applicable to every course of descent is that the heir must be born in lawful matrimony.    That was settled by the statute of Merton, and we can not allow the comity of nations to prevail against it.    The very rule that a personal status accompanies a man everywhere, is admitted to have this qualification, that it does not militate against the law of the country where the consequences of that status are sought to be enforced.    Here it would militate against our statute law to give effect to that status of legitimacy acquired by the lessor of plaintiff in Scotland.    He can not therefore be received as legitimate heir to land in England." 5 B. & C., 455.

Chief Justice Tindal, in delivering the opinion of the judges after the second trial, said:

"The grounds and foundation upon which our opinion rests are briefly these:

"That we hold it to be a rule or maxim of England with respect to the descent of land in England from father to son that the son must be born after actual marriage between his father and mother; that this is a rule *juris positivi*, as are all of the laws which regulate succession to real property; this particular rule having been formed for the direct purpose of excluding, in the descent of land in England, the application

of the rule of the civil and canon law, by which the subsequent marriage between the father and mother was held to make the son born before marriage legitimate; and that this rule of descent, being a rule of positive law annexed to the land itself can not be allowed to be broken in upon or disturbed by the law of the country where the claimant was born, and which may be allowed to govern his personal status as to legitimacy upon the supposed ground of the comity of nations. 7 Cl. & Fin. 925.''

The chief justice then proceeds to make an elaborate statement of the statute of Merton and the circumstances under which it was passed, showing the settled policy of England as to the law of descent.

It was upon this ground that Lord Brougham, though not wholly convinced as he stated to the House of Lords, waived his objections to the judgment for the defendant; as did also Lord Cottenham, 7 Cl. & Fin. 939, etc., and 957.

In the case of *Dons Estate*, 4 Drewry, 194, Vice Chancellor Kindersley declares—

''That the general principle was that the legitimacy or illegitimacy of any individual is to be determined by the law of that country which is the country of his origin; if he is legitimate in his own country, then all other countries, at least all Christian countries, recognize him as legitimate everywhere, and that the ground of the decision in *Doe* v. *Vardill* was, that, admitting the personal status of legitimacy, the law of England attached to land certain rules of inheritance which could not be departed from. Therefore, assuming that a son born in Scotland before marriage of his parents domiciled there, and then legitimate in consequence of their subsequent marriage, was legitimate all over the world, at any rate, in England; yet as he could not inherit land in England from his father or from any other person, so no other person could succeed to him by inheritance except his own issue.''

In *Shaw* v. *Gould*, L. R., 3 H. L., 55-70, Lord Cronworth said of *Doe* v. *Vardill*:

''The opinions of the judges in that case and of the noble lords who spoke in the house, left untouched the question of legitimacy, except so far as it was connected with succession to real estate. I think that they inclined to the opinion that for the purposes other than succession to real estate; for purposes

unaffected by the statute of Merton, the law of the domicile would decide the question of status. No such decision was come to, for no question arose except in relation to heirship to real estate. But the opinions given in the case seem to me to show a strong bias towards the doctrine that the question of status must for all purposes unaffected by the feudal law, as adopted and acted on in this country, be decided by the law of the domicile.''

In the case of *Ross* v. *Ross*, already referred to, Mr. Chief Justice Gray, in the opinion, says:

''The most accomplished commentators on the subject, English and American, are agreed that the decision in *Doe* v. *Vardill* which has so great an influence with English judges, does not rest upon general principles of jurisprudence, but upon historical, political and constitutional reasons peculiar to England.

''Westlake's Private International Law, Secs. 90-93-4, Kent's Com. 413 N d, etc., upon questions of comity of states; considerations derived from the feudal law, from an act of Parliament of the time of Henry III, and from the Constitution and policy of the English government, have no weight in Massachusetts at the present day.''

So in this state. Our Legislature as early as 1805 passed the act which is now Section 4175, Revised Statutes, which has remainded ever since in substantially the same terms. Then it was enacted in the act ''regulating the course of descent and distribution of personal property;'' now it is found in the chapter upon descent and distribution generally.

In *Morris* v. *Williams*, 39 O. S., 554, it was held:

''The issue of a slave marriage, though their parents die before the emancipation proclamation, are under the statutes of this state lawful heirs of their father as to lands situated in this state.''

Mr. Judge Okey in delivering the opinion of the court, after referring to this statute, says:

''We need not determine as to the precise effect of the Virginia marriage. If we assume it even to have been void, the case is controlled by the provision uoted. If it was voidable the case is still controlled by the statute, if indeed any such provision as to voidable marriage was necessary. And clearly, it is immaterial whether the marriage 'null in law' took place in this state or elsewhere.''

It is difficult to see why the decision in this case, which refers to the latter clause of Section 4175, and which is conclusive of the question as to the general effect of that clause, should not have equal force to the former clause.

We are, therefore, of opinion that the case of *Smith* v. *Derrs, Admrs., supra,* based as it is entirely upon *Doe* v. *Vardill,* and upon which plaintiffs in this case lay so much stress in their argument, and upon which they almost exclusively rely, has no force and effect in our law whatever.

It having been determined that there is nothing in the policy and law of our state which restricts inheritable capacity to children born in lawful wedlock, the question is can a child duly adopted in a foreign state inherit from its ancestor real estate situate in this state? The general principle is that the status or condition of a person, the relation in which he stands to another person, and by which he is qualified and made capable to take certain rights in that other's property is fixed by the law of the domicile; and this status and capacity are to be recognized in every state, so far as they are not inconsistent with its own laws and policy.

See authorities cited in *Ross* v. *Ross,* 129 Mass., 246, 247:

"If a marriage in the proper sense of the term is celebrated in one state, according to the form prescribed by its laws, between persons domiciled there and competent to intermarry, it is universally admitted that the woman must be recognized everywhere as the lawful wife of the man and entitled as such, upon his death, to such dower in his lands as the law of the state in which they are situated allows to a widow; although it is this law and not the law of the domicile which fixes the proportion she shall take." (Same authorities.)

As to foreign divorces, it is settled in most of the states that a decree of divorce recorded in another state in which the legal domicile of the parties is at the time, and according to its laws, is valid and conclusive in a suit concerning the husband's interest and the wife's dower in the real estate where it is situated. Such is the law of this state. *McGill* v. *Deming,* 44 O. S., 645-656.

We have also seen in the discussion of the case of *Doe* v. *Vardill,* that the principle was recognized in that case, that a child's

status is fixed by the law of the domicile of the parent, and if the child is legitimate under the law of the domicile he is legitimate everywhere and may have inheritable capacity in all states except those the laws and policies of which preclude such capacity.

What, then, is the policy of our own state? Could it be more signally set forth than by Section 3137 and 3140 providing for the adoption of children, which gives to such adopted children, even as to capacity to inherit, substantially the same rights as are possessed by children born in lawful wedlock? Can it be said that our statutes of descent and distribution, when they speak of children, do not mean children by adoption, wherever adopted? Does the comity between the states and the laws of the different states mean nothing? We have said, if not in terms, by fair inference (*Morris* v. *Williams, supra*), that by the subsequent marriage of the parents, children illegitimate become legitimate wherever the marriage takes place. Can you say to other states: "You should recognize children adopted in our state as children for all purposes (Revised Statutes, 3140), including inheritable capacity, and deny the same rights to children adopted in such other states?" Certainly not. And this holding finds favor in nearly all, if not all, of the reported decisions to which attention has been directed by counsel or that we have been able to find.

In the case of *Ross* v. *Ross,* 129 Mass. 243, to which we have referred so frequently, the syllabus is:

"The status of any person, with the inherent capacity of succession or inheritance, is to be ascertained by the law of the domicile which creates the status, at least when the status is one which may exist under the laws of the state in which it is called in question, and when there is nothing in those laws to prevent giving full effect to the status and capacity acquired in the state of the domicile.

"A child adopted with the consent of its father and the sanction of a judicial decree, in another state, where the parties are domiciled at the time, under a statute by which a child so adopted has the same rights of inheritance as legitimate offspring in the estate of the adopting father, is entitled, after the adopting father and the adopting child have removed their domicile into this commonwealth, to inherit here the real estate of such father as against his collateral heirs: although his wife

has given no formal consent to the adoption, as is required under the statutes of adoption of this commonwealth.''

The last question is: What effect shall be given to the proceeding to sell real estate in controversy in the probate court? The conclusion to which we have arrived makes it unnecessary to decide that question, but as counsel have made it, we have concluded to do so.

The plaintiff was the administrator of his deceased wife's estate. He filed his petition, as such administrator, to sell the three pieces of land. He made the defendant a party, setting forth, he claimed, some interest in the real estate sought to be sold, and required him to answer. He did answer, and set up the same claim as he did in this court that, as the adopted child of the deceased, he was entitled to all the real estate subject to the dower interest of the plaintiff. The probate court decided precisely as this court has decided, that the adoption was valid and that defendant inherited the property.

The issue was clear and distinct and fully litigated. Why, then, is not the decision of the probate court *res adjudicata?* Counsel have informed us of no reason, and we can not conceive of any except it be that the parcel of land now in controversy was not sold; but the finding and decree of the court was made as to all three pieces.

Furthermore, so far as we are informed by the record the proceeding in the probate court is still pending. No final disposition has been made of the case. Indeed, the plaintiff has waived that proceeding and brought this action; but he can not waive any question that was properly decided in that proceeding, but is bound by it; and we think the decision of the probate court goes to all the land that was sought to be sold, and the plaintiff is estopped from again litigating it. That the probate court had jurisdiction to hear and determine the questions there made, there can be no doubt. *Doan et al* v. *Biteley,* 49 O. S., 588.

The decree of the court is that the defendant, William Le Roy Simpson, is entitled to the real estate sought to be partitioned, subject to the dower interest of Thompson Simpson.

*John F. Stockdale,* for plaintiff.

*Charles S. Turnbaugh* and *W. W. Stewart,* for defendant.