FOUNTAIN v. THE STATE.

1. The act approved August 19, 1916 (Acts 1916 p. 56), is not void because in conflict with the constitution of Georgia, art. 6, sec. 2, par. 9 (Civil Code, § 6506), in so far as the General Assembly in said act authorizes jurisdiction of the Court of Appeals by "separate divisions of said court consisting of members thereof comprising less than the whole membership of the court."  This section of the constitution expressly authorizes the General Assembly to otherwise provide by statute.

2. Where there is express authority to the effect that two members of a division consisting of three judges of the Court of Appeals shall constitute a quorum, such quorum, when concurring, may lawfully decide cases pending before them.

3. The act of the General Assembly approved August 19, 1916 (Acts 1916, p. 56), in so far as it provides that "all criminal cases shall be assigned to one division," and "that each division. shall hear and determine, independently of the other, cases assigned to it," is not void because in conflict with the constitution of Georgia, art. 6. sec. 2, par. 9 (Civil Code, § 6506).  This section of the constitution expressly authorizes the General Assembly to otherwise provide by statute.

4. The act approved August 19, 1916 (Acts 1916, p. 56), is not void because in conflict with the constitution of Georgia, art. 6, sec. 2, par. 9 (Civil Code, § 6506), in so far as it provides for the election of three additional Judges of the Court of Appeals.  No constitutional amendment was necessary to confer upon the General Assembly power to increase the number of the Judges of the Court of Appeals, since the constitution, in the clause invoked, provided that the Court of Appeals shall, "until otherwise provided by law," consist of three Judges.

(a)  The two Judges of the Court of Appeals who decided the case, concurring in an affirmance, did not receive their commissions as such

Judges by authority of the act of 1916. The statement of facts in the petition for certiorari in this respect is based upon misapprehension. These are facts of which this court will take judicial cognizance.

5. The court erred in admitting the following evidence: "He [movant] walked up there and just pulled the gun and stuck it up the negro's neck, and Mr. Nasworthy called him over there and told him to come over there, that he would run off the music," there being nothing in the record to connect this transaction with the homicide for which the accused was on trial.

6. The character of the deceased for violence having been put in issue, the solicitor-general on cross-examination interrogated a witness in regard to particular acts and sayings of the deceased. Counsel for the accused sought to elicit evidence of such acts and sayings in their entirety, which, on objection, the court refused to allow. This was error.

7. The facts of the case did not warrant the charge of the court on the subject of flight, without submitting to the jury for their determination the question of whether or not the evidence in fact showed flight upon the part of the accused. Accordingly the court committed error in his instructions to the jury on this subject.

8. Other grounds of the motion for new trial need not be dealt with in detail. They were of such character as will not occur on the next trial, or, although subject to some criticism, did not show such error as would require the grant of a new trial. No opinion is expressed as to whether the verdict was supported by evidence.

No. 1280. NOVEMBER 17, 1919.

Certiorari; from Court of Appeals. *23 Ga. App.* 113 (98 S. E. 178).

*H. J. Quincey, John W. Bennett,* and *Atkinson & Born,* for plaintiff in error.

*J. B. Wall, solicitor-general,* and *A. J. McDonald,* contra.

GILBERT, J. This case comes on writ of certiorari from the Court of Appeals. On October 1, 1917, by appropriate order, the Chief Judge of the Court of Appeals divided that court into two divisions and designated Presiding Judge Broyles and Judges Bloodworth and Harwell to constitute the second division. This case was argued before the second division as thus designated, all three of the Judges being present. After the argument, but before the decision of the case, Judge Harwell's term of office expired, and he was succeeded by Judge Stephens, who was assigned to the second division in lieu of Judge Harwell. Thereafter the case was decided, Judges Broyles and Bloodworth concurring in a judgment of affirmance, Judge Stephens not participating. A motion for rehearing was made, in which the legality of the judgment of affirmance was called in question. The grounds upon which the motion for rehearing was based are substantially the same as those

contained in the petition in this court for certiorari. It is contended that the judgment of affirmance rendered by the Court of Appeals is void, because in conflict with designated clauses of the constitution of Georgia. There are other grounds assigned as a basis for the certiorari upon which it is sought to set aside the judgment of the Court of Appeals, but those based upon constitutional reasons will be first considered.

1. Error is assigned on the action of the Court of Appeals in hearing and deciding the case by one division alone, and not by the court as a whole. It is insisted that that court overlooked the limitation upon its powers contained in article 6, section 2, par. 9, of the constitution of Georgia (Civil Code, § 6506), and erroneously adopted and "pursued the practice provided by the act of the General Assembly approved August 19, 1916, entitled "An act to prescribe the number of Judges of the Court of Appeals of this State, to provide for the election of such Judges, to prescribe regulations for conducting the business of said court, and for other purposes," there being no provision in the constitution of this State as embodied in the clause above mentioned, or elsewhere, "which would authorize the General Assembly to divide the jurisdiction of the court so that such jurisdiction might be exercised by separate divisions of said court consisting of members thereof comprising less than the whole membership of the court." It is insisted that the act of the General Assembly aforementioned is unconstitutional and void and in derogation of the provisions of the constitution aforesaid, in so far as it undertakes to confer jurisdiction on the Court of Appeals to hear and determine cases by any number of the members of the court constituting less than the whole. Article 6, section 2, par. 9, of the constitution of Georgia (Civil Code, § 6506), was ratified and became a part of the constitution of this State on November 6, 1906. This amendment to the constitution, in part, contains the following provision: "The laws relating to the Supreme Court, . . the powers, practice, procedure, times of sitting, . . and in all other respects except as otherwise provided in this constitution, and until otherwise provided by law, shall apply to the Court of Appeals so far as they can be made to apply." At that time there existed as a part of the constitution of this State the following provision in regard to the Supreme Court: "The court shall have power to

hear and determine cases when sitting either in a body or in two divisions of three Judges each, under such regulations as may be prescribed by the General Assembly. A majority of either division shall constitute a quorum for that division." Art. 6, section 2, par. 8 (Civil Code, § 6505). This provision was made express- ly to apply to the Court of Appeals by the amendment to the constitution ratified on Nov. 6, 1906, and now a part of § 6506 of the Code of 1910. The latter provision, adopted by the people subsequently to the provision applicable to the Supreme Court, as will be noted from the portion quoted above, providing that the laws, powers, practice, etc., of the Supreme Court should apply to the Court of Appeals *"until otherwise provided by law,"* is significant of the legislative will and is controlling upon the issue just stated. We assume that no one will question that the term "provided by law" means provided by statute law. 3 Words & Phrases (2d Ser.), 1319. It is apparent that the framers of the amendment to the constitution were aware that future contingencies and developments might demonstrate the necessity for providing rules for the Court of Appeals which differed in some respects from those obtaining in the Supreme Court. Furthermore, the provision in the constitution with reference to the Court of Appeals did not undertake to make a hard and fast, iron-clad rule or uniformity of rules in the two courts, as is seen from the provision that the rules of the Supreme Court should apply "so far as they can be made to apply." Acting upon the authority contained in the constitution to otherwise provide by law, the General Assembly, by act approved August 19, 1916 (Ga. L. 1916, p. 56), provided: "The court shall sit in divisions of three Judges each, but two Judges shall constitute a quorum of a division." The passage of this act made inapplicable those laws relating to the Supreme Court as to powers, practice, procedure, etc., such as "where, for any reason, a case is heard in a division by only two Justices, the Chief Justice shall direct one or more Justices of the other division to participate in deciding it, or that it may be decided by the court as a whole," as found in the Civil Code, § 6114. Subsequently to the passage and approval of the act of 1916 the Court of Appeals adopted their rules, 18, 18(a), and 18(b).

2. Where there is express authority to the effect that two Judges shall constitute a quorum of a division, no reason appears for hold-

ing that more than two Judges, who concur in their opinions, are essential for the rendition of a valid judgment. The existence of a quorum would be of no practical value if that quorum could not transact business. The chief business of the court is to decide cases. The hearing of argument and the consideration of cases are important preliminaries to the decision itself. The meaning of the provision that two Justices shall constitute a quorum of a division must necessarily be that two Justices may render a decision when concurring. This has been explicitly decided by this court. *Greene County* v. *Wright,* 127 *Ga.* 150 (56 S. E. 288). It may be remarked that at the time when the number of the Judges of the Court of Appeals was increased to six the Supreme Court was empowered, under the laws and constitution of Georgia, to sit in two divisions, and either division sitting alone might render final judgment in any case argued before it, and such judgment had the same force and effect as if rendered by the court as a whole. Civil Code, §§ 6113, 6505. And it was further provided that two Justices of the Supreme Court should constitute a quorum of a division. Civil Code, § 6110. From the creation of the Supreme Court until the number of its Justices was, in 1896, increased to six, it was composed of three Justices, two of whom constituted a quorum and were empowered to transact business. Moreover, it was their uniform practice, for about half a century, to render decisions by two concurring Justices whenever the same was necessary. Almost the identical question was decided in the case of City of Austin v. Nalle, 85 Texas, 520 (22 S. W. 668); the difference being that in the Texas case one of the three Judges was disqualified because of interest. That case has been followed by a number of other cases in that State. Long v. State, 59 Tex. Crim. 103 (127 S. W. 551, Ann. Cas. 1912A, 1244). The notes subjoined to the last-named case as it appears in Annotated Cases are numerous and convincing, covering the decisions of many States. It is insisted, however, that, because this case was argued before three Judges, two Judges were powerless to render the decision. This question is controlled adversely to the plaintiff in certiorari by the case of *Greene County* v. *Wright,* supra, wherein argument was heard before a full bench, but Fish, C. J., did not participate in the decision, because of illness. Plaintiffs in error moved to vacate the judgment of

affirmance, on the ground that after a special order had been passed by the court that the case be heard by a full bench they were entitled to have all of the Justices who heard the argument participate in the decision of the case, and that a judgment by five Justices was irregular and void. It was held that if a quorum of the Justices participate in the decision the judgment is not void because of the failure of one of the Justices to take part in the decision.

3. It is further contended that this case was referred to the second division of the Court of Appeals under authority of the act approved Aug. 19, 1916, supra, which provided that "all criminal cases shall be assigned to one division," and "that each division shall hear and determine, independently of the other, the cases assigned to it," and that these provisions are unconstitutional and void, because at the time of the passage of that act the Court of Appeals was organized under the clause of the constitution found in the Civil Code, § 6506, and was given jurisdiction to determine writs of error in criminal cases less than capital; that amongst the other provisions of the constitution was the following: "The laws relating to the Supreme Court, . . the powers, practice, procedure, times of sitting, . . and in all other respects except as otherwise provided, and until otherwise provided by law, shall apply to the Court of Appeals so far as they can be made to apply," and that the portions of the act of 1916 above quoted are in conflict with the section of the constitution above quoted, and are therefore void. As we have already shown, the constitution, in the very section invoked, provides that the laws relating to the Supreme Court shall apply to the Court of Appeals "until otherwise provided by law," and that the General Assembly in the exercise of that authority have seen fit to otherwise provide by law in the act approved August 19, 1916 (Acts 1916, p. 56). This contention, therefore, is untenable and must be ruled adversely to the plaintiff in certiorari.

4. It is also insisted in the petition for certiorari that the judgment of the Court of Appeals is erroneous, because of the persons constituting the second division of the Court of Appeals, which division decided said case, only one of them, Judge Broyles, was legally qualified to sit as a Judge of said court, and that Judges Bloodworth and Harwell held "their respective offices under a

commission issued in pursuance of an election held under the supposed authority of an act of the General Assembly approved August 19, 1916" (Acts 1916, p. 56); and that said act of the General Assembly is null and void in so far as it provides for the election of three additional Judges of the Court of Appeals, because no authority for this increase of Judges is found in article 6, section 2, par. 9, of the constitution of Georgia (Civil Code, § 6506), which was in force at the time of the passage of the act, "and because the amendment to the constitution authorized by the act of Aug. 19, 1916 [Acts 1916, p. 19], did not become operative until its final adoption by the people and its final proclamation by the Governor, which last event occurred on Dec. 6, 1916." This contention is altogether untenable. As was said in the opinion in the case of *Joseph* v. *State*, 148 *Ga.* 166, 169 (96 S. E. 229): "This constitutional amendment was wholly unnecessary to confer upon the General Assembly the power to increase the number of Judges of the Court of Appeals from three to six." It may be added that the constitutional amendment found in § 6506 of the Civil Code provided that "The Court of Appeals shall, *until otherwise provided by law,* consist of three Judges." Herein was contained clear and explicit authority to the General Assembly to provide by law for an increase in the number of Judges of the Court of Appeals at its pleasure. It is suggested by plaintiff in certiorari that some of the expressions contained in the opinion in the *Joseph* case are obiter, and therefore not binding authority in the present case. The constitutional attacks made on the provisions of law touching the Court of Appeals refer only to the due-process clauses of the State and Federal constitutions. Incidental to and necessary to a clear understanding of the principles involved, other principles of law were discussed and stated. Strictly speaking some of these may be obiter. Whether they are in fact it is not necessary for us to decide. Wherever the same principles are involved in the present case they are reaffirmed, for the reasons there stated as well as those assigned herein. The statement of facts forming the basis of this ground of the certiorari appears to have been a misapprehension. Judge Bloodworth qualified as a Judge of the Court of Appeals on January 2, 1917. He succeeded Judge Hodges, who was commissioned a Judge of the Court of Appeals prior to the increase of its members from three to six. Judge

Harwell's appointment as a judge of that court became effective October 1, 1917. The constitutional amendment increasing the number of the Judges and fixing the jurisdiction of the Court of Appeals was ratified on November 17, 1916, and proclaimed by the Governor on December 15, 1916. Judge Harwell, however, did not participate in the decision. These are matters concerning the history of our State government, of which this court will take judicial cognizance. Civil Code (1910), § 5734. In the year 1904 this court took judicial cognizance of the fact that Judge Cole was the judge of the Macon Circuit during the period between 1865 and 1873. *Jossey* v. *Brown,* 119 *Ga.* 758, 765 (47 S. E. 350).

5. One ground of the motion for new trial assigns error on the admission of the following testimony over the objection of the accused, to wit: "He [movant] walked up there and just pulled the gun and stuck it up the negro's neck, and Mr. Nasworthy called him over there and told him to come over there, that he would run off the music." The ground of the objection was that this testimony referred to a transaction between the accused and a party other than the deceased, at a time prior to the killing of the deceased; and that the testimony was irrelevant and immaterial, because it tended to prove upon the trial of one charged with crime a criminal transaction wholly disconnected and disassociated with the crime with which defendant stood charged. It was also insisted that it was an effort to put the defendant's character in issue, and necessarily had the effect of prejudicing the jury against him. Neither the evidence quoted above nor the ground of the motion based upon its admission shows anything in regard to the length of time between the two transactions, nor anything in regard to the circumstances, from which it may be ascertained what connection, if any, existed between them. From the brief of evidence we can learn merely that the transaction referred to in the evidence quoted above took place on the outside of a building, and that the homicide for which the accused was on trial took place on the inside of the building. The witness, who testified in regard to both transactions, stated that he was there only 25 or 30 minutes. It is inferable, therefore, that the two transactions occurred within a period of time less than thirty minutes. A large crowd was on the inside of the building, and the testimony, taken altogether, sheds no light on the question of connecting the two transactions;

nor it is shown how the testimony to which objection was made could illustrate the state of mind or the motive of the accused or anything else material to the issue before the court. "In order to justify the admission of evidence relating to an independent crime committed by the accused, it is absolutely essential that there should be evidence establishing the fact that the independent crime was commited by the accused, and satisfactorily connecting· that crime with the offense for which the accused is indicted. Even if the evidence establishes the commission by the accused of the· independent offense, it is inadmissible until it be shown satisfactorily that the crime had some connection with the transaction then under investigation." *Cawthon* v. *State,* 119 *Ga.* 395, 409 (46 S. E. 897). The drawing of a pistol and pointing it at an individual other than the deceased, without other facts appearing, therefore, would be inadmissible. The general rule which prohibits proof of independent crimes unless there is some logical connection undoubtedly is subject to a few exceptions. One of the exceptions is where the evidence tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged. As we have already shown, the facts of this case are not sufficient to bring the evidence within this exception. The other exceptions are obviously inapplicable. In the case of *Whilden* v. *State,* 25 *Ga.* 396 (71 Am. D. 181), where one was indicted for the offense of stabbing, it appears that the accused made two assaults on the same person, the interval between the two being half an hour. The indictment on which he was tried was based on the second assault. In the opinion it was said: "Unless the first fight made a part of the second; that is, unless it was a part of the res gestæ, the first fight could not possibly constitute a defense in a case founded on the second." It was held that the evidence was inadmissible. Under the facts of this case as they appear, the admission of the evidence complained of was prejudicial to the accused, and the error requires a reversal of the judgment overruling the motion for a new trial. On the next trial it is possible, of course, that a proper foundation may be laid for the admission of the evidence.

6. The defendant had put in issue the character of the deceased for violence. On cross-examination the solicitor-general sought to bring out from the character witness evidence of particular acts and sayings of the deceased, but declined to allow the witness to

state the occurrences in their entirety. Counsel for the accused then requested the witness to state the whole transactions or acts about which he testified, showing what the witness would have sworn if permitted, and that the same tended to benefit the accused. Upon objection by the solicitor-general the court refused to allow this testimony. We think this was error. Where one party elicits evidence as to a part of a conversation or transaction, the other side is entitled to have the whole evidence of the same conversation or transaction. Penal Code, § 1030.

7. Error is also assigned on the charge of the court on the subject of flight. It is insisted that the facts did not warrant a charge on that subject, and that the charge was in itself an incorrect statement of the law. The facts, in our opinion, do not warrant a charge upon the subject of flight, without submitting to the jury for their determination the question whether in fact the evidence showed flight upon the part of the accused. It appears that the accused, after the homicide and until his arrest, was no further from the scene than a few hundred yards, nor was he apparently making any effort to flee. The charge, while subject to some criticism, would not of itself, perhaps, require the grant of a new trial.

8. Other grounds of the motion for new trial assign error on the refusal of the court to continue the case on account of the absence of one of defendant's counsel; because the court refused to grant a mistrial, on motion of defendant's counsel, because of the arrest of one of defendant's witnesses in the presence of the jury, and on account of improper argument of the solicitor-general; because evidence was admitted of a portion of a written motion for continuance submitted by movant on a previous occasion, and the rejection of another portion of the same written motion; because the court voluntarily, without cause and without objection on the part of the State's counsel, interrupted the argument of one of defendant's counsel; and because of alleged errors in portions of the charge of the court. Since the judgment of the court is reversed for reasons already stated, we deem it unnecessary to deal in detail with these assignments of error. The rulings in regard to the motion to continue; the refusals to declare a mistrial, and the same interruptions of counsel for defendant while making his argument to the jury, will not likely occur again, and will have no

bearing on the next trial. The admission as evidence of a portion of the written motion for a continuance does not in itself show any error. The portion rejected is not shown in the motion for new trial or attached thereto; and this court has no means of ascertaining whether it was material or immaterial. There is a written motion to continue, made at a previous time, incorporated as a whole in another ground of the motion for new trial. If this could be considered, there are portions of it which are immaterial and inadmissible. The charges of the court upon which error is assigned are subject to some criticism, but in themselves would not require the grant of a new trial. They are subject to criticism only as to verbal inaccuracies such as are likely to occur and do occur in the trial of lengthy and hotly contested cases. It is sufficient to say that on another trial the presiding judge will doubtless guard against the verbal inaccuracies of which complaint is made.

*Judgment reversed. All the Justices concur, except Atkinson, J., absent.*